829 P.2d 1355

**John E. CHEN and Nelcine L. Chen, Plaintiffs-Appellants,**

v.

**Robert J. CONWAY, Defendant-Respondent.**

No. 18854.

Court of Appeals of Idaho.

July 3, 1991.

Udell Law Offices of McCall and Elam, Burke & Boyd, Boise, for plaintiffs-appellants. J. Ray Durtschi argued.

Ellison M. Matthews, Boise, for defendant-respondent.

WALTERS, Chief Judge.

In this case we are presented with the second appeal of John and Nelcine Chen from a judgment awarding their neighbor on Payette Lake, Robert Conway, a prescriptive easement for a driveway over the Chens' lot. Initially, the Chens had sued to quiet title to their lot. Conway asserted a right to a prescriptive easement. The district court granted the easement and the Chens appealed. This Court vacated the judgment and remanded for further findings, citing the district court's failure to make written findings of facts and conclusions of law and directing the court to answer specific questions on remand. The district court answered the questions, again finding that Conway had established a prescriptive easement. We hold that the district court erred in its conclusion. For the reasons stated below, we reverse.

Facts and Procedural History

Upon the Chens' first appeal, we held that, because the district court had failed to make written findings of facts and conclusions of law, the record was inadequate to support the conclusion that Conway had established a prescriptive easement. However, we also concluded the record did establish that "Conway's use of the driveway was open, notorious, continuous, and uninterrupted for more than the prescriptive period." *Chen v. Conway*, 116 Idaho 901, 903, 781 P.2d 238, 240 (Ct.App.1989) (*Chen I*). We further determined that "although the Chens do not appear to have had knowledge of Conway's use for the prescriptive period, their predecessors in interest certainly did." *Id.* On remand, we directed the district court to make written findings of facts and conclusions of law and to respond to six questions which remained unanswered in the record. The six questions were:

1. Was Conway's use of the driveway made under a claim of right (i.e., was it hostile)?

2. Was Conway's use of the driveway initiated with the permission of the Chens or their predecessors-in-interest?

3. If Conway's use was initially permissive, did such use thereafter become adverse (i.e., hostile) and what facts establish that it became adverse?

4. Did Conway jointly use the driveway with the Chens or the predecessors-in-interest of the Chens?

5. If there was a joint use, who established and maintained the driveway?

6. If there was such a joint use, did Conway merely use the driveway in common with the Chens or the Chens' predecessors-in-interest or did such use by Conway constitute some infringement or invasion of the rights of the Chens or of their predecessors-in-interest?

*Id.* at 903–04, 781 P.2d at 240–41.

On remand, the district court specified that Conway's use of the driveway was open, notorious, continuous, and uninterrupted. The district court also found that Conway's use, or that of his predecessors-in-interest, was under a claim of right, was without permission, and if the driveway was jointly used, the joint use affected only a portion of the driveway. The court found that Conway had acted adversely to the Chens or their predecessors-in-interest for the required five-year period and had established a prescriptive easement.

Now, the Chens appeal for the second time, asserting that there was insufficient evidence to support the district court's new findings and conclusions. Also, the Chens argue that the court erred when it concluded that Conway's use of the driveway entitled him to a presumption of adverse use, thereby transferring to the Chens the burden of showing that Conway's use was permissive. Further, the Chens claim that the court erred when it failed to apply the "wild, unenclosed, or unimproved land" exception to defeat the presumption of Conway's adverse use. The Chens also challenge the district court's award of attorney fees to Conway. For the reasons stated below, we reverse the judgment of the district court.

## Standard of Review

■ Whether a private prescriptive easement has been proved presents en-

twined questions of law and fact. In our review, we defer to the facts found by the trial court that are supported by substantial and competent evidence. I.R.C.P. 52(a). Evidence is "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Christensen v. Ruffing*, 117 Idaho 1047, 1049, 793 P.2d 720, 722 (Ct.App.1990). Generally, when evidence is presented in the form of testimony by a witness, we will not substitute our assessment of the credibility of the witness for that of the district court. *Id.* However, where the evidence is entirely in writing, we may draw our own impressions from the record, but we will not substitute our impressions for findings of fact by the trial judge unless we are convinced that those findings are clearly erroneous. *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App. 1983). Finally, we freely review the conclusions of law to determine whether the trial court properly applied the legal requirements for a private prescriptive easement to the facts as found. *See Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). *See also* Standards of Appellate Review in State and Federal Courts, IDAHO APPELLATE HANDBOOK § 3.2.2 (Idaho Law Foundation, Inc. 1985).

## The Presumption of Adverse Use

■ The district court found that Conway's use of the driveway created a presumption of adverse use against the Chens. Then, the court held that the Chens had not rebutted the presumption because they had not proved that Conway's use was permissive, and therefore Conway was entitled to the prescriptive easement. The Chens argue that the court erroneously concluded that Conway was entitled to the presumption. We agree.

It is established law in Idaho that, generally,

proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, *without evidence as to how the use began,* raises the presumption that the use was adverse and

under a claim of right. The burden is then on the owner of the servient tenement to show that the use was permissive, or by virtue of a license, contract, or agreement. [*quoting West v. Smith,* 95 Idaho 550, 557, 511 P.2d 1326, 1333 (Ct.App.1986); emphasis added.] *Chen I,* 116 Idaho at 903, 781 P.2d at 240–41, *quoting Melendez v. Hintz,* 111 Idaho 401, 404, 724 P.2d 137, 140 (Ct.App.1986).

Here, the Chens are the owners of Lot 7, the servient tenement, and Conway is the owner of Lot 3, the dominant land. This Court stated in *Chen I* that Conway's use was open, continuous, and uninterrupted for the prescriptive period. The remaining determination for the district court was whether the use was under a claim of right, and more specifically, how the use of the driveway began.

Initially, we must address a factual inconsistency. There is some dispute among the briefs and the findings of the court as to the date Lot 7 was acquired by the Chens' predecessors-in-interest, the Parberrys. In her deposition, Viola Parberry testified that she and her husband had bought the parcel in 1954. However, the errata sheet attached to the deposition indicates that Viola Parberry corrected that statement to read "1947." We note that the discrepancy is not critical to our decision.

The district court found that when the Parberrys purchased Lot 7 in 1947, there was an existing dirt driveway crossing the southwest corner of the lot, which provided access to a cabin on Conway's Lot 3. The court stated that there "is no competent evidence before this Court as to who first established the driveway."

Conway and the Chens presented conflicting evidence on this subject. Conway testified that the driveway had been in place since Newton's Tent Camp used the area in 1935. He claimed that his predecessors-in-interest, the Spellerbergs, also used the driveway. However, Conway provided no foundation for this information and could not testify to it on the basis of personal knowledge because the first time he saw the lot was during a visit there in 1964, one year before his purchase. None of his predecessors-in-interest testified as to the development of the driveway. However, Viola Parberry testified in her deposition that Jack Marshall, a lessee of the Parberrys, installed the driveway sometime after 1947 to facilitate construction and access to a cabin, outhouse, and boat house that he built on what is now the Chens' lot.

The Chens argue that the court erred when it disregarded Viola Parberry's testimony. Conway, however, asserts that Viola Parberry's deposition testimony did not reveal who started the driveway, but was in fact "vague and ambiguous as to when and how the driveway across the Chens' Lot 7 was established." Although Viola Parberry's testimony is sometimes unclear, we do not conclude that it is so vague or ambiguous that it cannot be relied upon. In her deposition, for example, Viola Parberry testified as follows:

Q: At the time of your sale, how did Mr. Conway get to and from Lot 3?

A: There was a road that took off, off of our road, entrance road, that came down to Lots 1 and 2.

\* \* \* \* \* \*

Q: And that was the generally traveled path through the property?

A: The only people that were using it was [sic] the Jacobs, who owned this lot at that time, and Bob Conway owned that, and then when we—when the Jack Marshalls leased this lot and built onto that, he—evidently put in a road to that lot.

\* \* \* \* \* \*

Q: All right. Then, after Mr. Marshall leased the property and put the cabins on it, he also used that roadway?

A: Yeah, and he fixed a road in to his property here.

\* \* \* \* \* \*

Q: The road that's there now, not the road but the driveway that's there now, how long has it been in that position or place?

A: Well, it's the original road that goes that the Jack Marshalls used—

Q: All right.

A: —they put in there.

Q: Now before Jack Marshall cut that road in, do you know how Mr. Conway got access to his property?

A: I really can't remember. That's been so long ago.

■ We do not conclude that Viola Parberry's testimony was inherently improbable, incompetent or incredible. A court may not reject the positive, uncontradicted testimony of a credible witness unless her testimony is inherently improbable or impeached. *Airstream, Inc. v. CIT Financial Services, Inc.*, 111 Idaho 307, 723 P.2d 851, *appeal after remand* 115 Idaho 569, 768 P.2d 1302 (1988). We find that the court erred when it found that there was no competent evidence as to who established the driveway, and thus erred when it gave Conway the benefit of the presumption of adverse use.

### The Joint Use Exception

■ Our Supreme Court has articulated at least two exceptions to an assertion of adverse use. The first exception we will discuss states that if an owner of real property builds a driveway over the property for his own use and convenience, the mere use of the driveway by others, which does not interfere with the owner's use, will be presumed to be by license or permission. *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941).

■ To defeat the *Simmons* exception, Conway had to prove that his use of the driveway was not in common or joint with the Chens but infringed or burdened the Chens' possessory right. The district court found that Conway met his burden by establishing that he and his predecessors-in-interest used the entire driveway across the Chens' Lot 7 and into Conway's Lot 3, whereas the Chens and their predecessors only used the portion of the driveway that crossed Lot 7. In its conclusions of law, the court stated that

> although following [Conway's] predecessors in interest's continuous, open, and uninterrupted use of said driveway for more than five years, there was a joint use of said driveway by the parties and their predecessors in interest, the use of the entire driveway, was only solely and exclusively used by [Conway] and his predecessors in interest and such use constituted an infringement and invasion of the rights of the Chens and their predecessors in interest, as the owners of Lot 7.

The court also stated in its findings of facts that Conway's predecessors-in-interest were the sole and exclusive users of the driveway across the Chens' lot for five years before there was any joint use by the Chens or their predecessors-in-interest. The court's finding and conclusion are not adequately supported by the evidence.

Conway presented evidence that the Marshall buildings on the Chens' lot had been built before Conway purchased his lot from the Spellerbergs. If the construction of the cabin, outhouse and boat house on the Chens' lot led to the establishment of the driveway by Marshall, as Viola Parberry testified, then the *Simmons* exception to the presumption of adverse use applies in that Conway's use is joint with the Chens' use and that of their predecessors. Moreover, according to Conway's evidence, the Marshall cabin was located where the Chens' house is presently situated. The house is so close to Conway's lot that Conway asserted that the house extended across the boundary line onto his lot. Also, the evidence shows that the house is close enough to the driveway and the property boundaries that the driveway interferes with the Chens' parking. To exit the parking area, one must almost back onto Conway's lot. These facts lead us to the conclusion that Conway's use of the driveway is in common with the Chens' and is permissive, not adverse.

### The Wild, Unenclosed, Unimproved Land Exception

The Chens assert that the district court erred by failing to apply the "wild, unenclosed, unimproved land" exception to Conway's assertion of adverse use. We agree.

■ The wild, unenclosed, or unimproved land exception occurs when the ser-

vient land is wild, and someone uses that land to reach their own land, thereby creating a presumption that the use is permissive. *See Melendez, supra.* Put another way, when one claims an easement by prescription over the wild or unenclosed lands of another, the "mere use of the way for the required time is not generally sufficient to give rise to a presumption that the use is adverse." *Cox v. Cox,* 84 Idaho 513, 522, 373 P.2d 929, 937 (1962). This exception has a strong foundation in public policy, and

> assumes that the owner of such [servient] land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not offer any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand there would be no reason or basis for such inference of permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation.

*Cox, supra.*

▮▮▮ In the present case, the evidence supports the application of this exception. The district court found that "at the time of the Viola Parberry purchase there were no improvements on what is now the Chens' Lot 7." The record indicates that, prior to the time the Parberrys' lessee, Marshall, installed an outhouse, cabin, and boat house on the Parberrys' lot, it was wild, unenclosed and unimproved. The evidence also indicates that Marshall could have built those structures anytime between 1947 and 1965. Viola Parberry testified at her deposition in 1986 that the Marshall cabins were built twenty to twenty-five years before, in other words, between 1960 and 1965. Moreover, Conway presented evidence that the Parberrys' lot

was not developed until 1965 or 1966 by Marshall. Conway claims that because the lot was undeveloped until that time, and the Parberrys knew of Conway's predecessors-in-interest use of the road, his predecessors were acting adversely to the Parberrys' interest. However, under the wild, unenclosed land exception, there can be no adverse use even with the servient owner's knowledge. While the land is undeveloped the use is deemed permissive.

In an attempt to rebut the Chens' argument that Marshall established the driveway, Conway asserts that the Spellerbergs built the driveway and did so more than five years before Marshall built his cabins on Lot 7, the Chens' lot. There is no evidence to establish this fact beyond Conway's bare assertion. Viola Parberry testified that there were cabins on the Spellerberg lot, but there is no evidence in the record establishing when those cabins were built. The Spellerbergs owned the lot until 1965 when they sold it to Conway. The Spellerberg cabins could have been built any time before the sale to Conway.

#### Contradictory Findings by the Court

In this case, the district court made two inconsistent factual findings. First, the court found that "there is no competent evidence before this Court as to who first established the driveway." Second, the court stated that the driveway existed at the time the Parberrys purchased the lot and was, at that time, being used by Conway's predecessors. Regarding the first finding, the court had to reject the evidence presented by Conway and Viola Parberry as to who built the driveway. As to the second finding, the court had to rely on Conway's already rejected evidence that his predecessors established the driveway, not Marshall, the lessee of the Parberrys. The court erred when in relied on the same evidence to make two factual findings that are inherently contradictory.

#### Attorney Fees Below

▮▮▮ On remand, the district court awarded $940 in costs and attorney fees to Conway, who had asserted a claim for fees under I.C. §§ 12–120, 12–121, and I.R.C.P. 54(e)(1). It is unclear upon which statute

or rule the court based its award. If the award of fees was based on I.C. § 12–121, then the district court erred in that it did not make a written finding as to the basis and reason for the award of fees as mandated in I.R.C.P. 54(e)(2). Moreover, by our own reversal of the judgment, Conway is not the prevailing party, a requisite for an award of fees under I.C. § 12–121. Finally, this dispute was over an easement right between landowners, a non-pecuniary issue and one which did not arise from a contract or a commercial transaction. Therefore, I.C. § 12–120 does not apply. *See Joseph C.L.U. Insurance Assoc., Inc. v. Vaught,* 117 Idaho 555, 789 P.2d 1146 (Ct.App.1990). Accordingly, we set aside the court's award of fees and costs to Conway.

### Conclusion

Conway presented evidence that the Marshall cabins on the Parberrys' lot had been built before Conway purchased Lot 3, that is, sometime during the occupancy by Conway's predecessors, the Spellerbergs. There is evidence indicating that the construction of the cabins on the Parberrys' lot led to the establishment of the driveway by Marshall. In such a case, the *Simmons* joint use exception to Conway's assertion of adverse use applies. On the other hand, there is evidence indicating that the driveway was established by Conway's predecessors-in-interest before the Marshall cabins were built on the Parberrys' lot. In that instance, the wild, unenclosed, or unimproved land exception applies to prevent the use of the driveway by Conway's predecessors from becoming hostile and adverse. The district court erred when it failed to apply this exception. The judgment of the district court is reversed. The court is directed on remand to enter a decree quieting title in the Chens as against Conway's claim of easement. Costs to appellants, the Chens. No attorney fees on appeal.

SWANSTROM, J., and HART, J., pro tem., concur.