962 P.2d 1041

**SUN VALLEY HOT SPRINGS RANCH, INC., an Idaho corporation, Plaintiff–Appellant–Cross Respondent,**

v.

**Donna R. KELSEY and Sun Valley Land and Minerals, Inc., an Idaho corporation, Defendants–Respondents–Cross Appellants,**

**No. 23629.**

Supreme Court of Idaho,
Boise, March 1998 Term.

July 23, 1998.

Roger E. Crist, Ketchum, for Appellant.

Hawley, Troxell, Ennis & Hawley, Ketchum, for Respondents. Edward A. Lawson argued.

SCHROEDER, Justice.

This is a declaratory judgment action to determine ownership rights in common areas and access easement rights allegedly created pursuant to a subdivision plat and declaration of covenants, conditions and restrictions recorded by a subdivision developer.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Clarendon Hot Springs Ranch, Inc. (Clarendon) owned a 320–acre tract of land near Clarendon Hot Springs in Blaine County, Idaho, which it planned to develop into a residential subdivision. The land was to be developed in two phases: the first phase, Clarendon Subdivision No. 1 (subdivision property) consisted of 240 acres, and the second phase consisted of the remaining 80 acres. Patrick Ryan was an officer, director and shareholder of Clarendon at the time the subdivision plan was initiated.

Clarendon obtained a $400,000 loan from First Federal Savings and Loan (First Federal) to develop the subdivision. Clarendon gave First Federal a mortgage on the entire 320 acres to secure the loan. The mortgage was recorded on September 18, 1975.

On April 9, 1976, Clarendon recorded a plat map and a declaration of covenants, conditions and restrictions (CC & Rs) regarding the subdivision. Thereafter, Clarendon conveyed Lot 44 located in the subdivision property to James and Deama Davis. The deed described the property as follows:

> Lot 44, CLARENDON SUBDIVISION NO. 1, Blaine County, Idaho, according to the official plat thereof recorded in Book 14 of Plats, page 1, records of Blaine County, Idaho.
>
> TO HAVE AND TO HOLD, the said premises, with their appurtenances unto the said Grantee and to the Grantee's heirs and assigns forever. . . .

The deed was recorded on October 19, 1976.

On October 21, 1976, First Federal executed a partial release of its mortgage interest in Lot 44. The partial release was recorded the following day and stated, in pertinent part, that the mortgage was

> released and discharged as to that part of the mortgaged property described as follows:
>
> Lots 44 and 45 of CLARENDON SUBDIVISION NO. 1, Blaine County, Idaho
>
> but said mortgage and the lien thereof is retained as to any other than the above described property.

Clarendon did not complete development of the subdivision property and defaulted on the loan from First Federal in 1978. First Federal commenced foreclosure proceedings and purchased the subdivision property through a sheriff's sale, less the lots already sold. First Federal assigned its interest in the subdivision property to Traveller's Mortgage Corporation, and through a series of quit claim deeds, respondents, Donna Kelsey (Kelsey) and Sun Valley Land & Mineral, Inc. (SVLM), acquired the property. Kelsey and SVLM have never acknowledged any obligation to convey any common area or construct any improvements in the subdivision.

The Davises deeded their interest in Lot 44 to Sun Valley Hot Springs Ranch (SVHS) in 1988. Patrick Ryan was the president of SVHS at that time and remains one of the principals of SVHS. Ryan was formerly an officer, director and shareholder of Clarendon which failed to develop the subdivision. Marty and Brett Goldsmith, the intervenors in this case, presently hold a leasehold interest in a 3–acre parcel of land located in the subdivision property now owned by Kelsey and SVLM but are not parties to this appeal.

SVHS filed this action claiming that Kelsey and SVLM had an obligation to complete construction of the subdivision and that they had breached their obligation. Kelsey and SVLM counterclaimed, requesting a declaratory judgment that they do not have an obligation to convey any common area or to construct any subdivision improvements. SVHS filed an amended complaint expanding its request for relief to include a declaration that the lot owners own common area and access rights. SVHS sought an order of specific performance requiring Kelsey and SVLM to convey the common area to the lot owners.

660

Both parties filed motions for summary judgment. The district court granted summary judgment in favor of Kelsey and SVLM, concluding as follows:

When First Federal foreclosed on their mortgage which was recorded prior to any subdivision documents, it acquired all the right, title and interest in the property as it existed when the mortgage was recorded. Since First Federal was a bona fide purchaser and [Kelsey and SVLM] are sheltered in that status, any covenants created by the subdivision documents are unenforceable against [Kelsey and SVLM].

The district court also held that First Federal's release of Lot 44 in favor of the Davises did not include any common area or access easement rights, noting that the language in the release had specifically preserved First Federal's mortgage interest in all property other than Lot 44. The judgment in favor of Kelsey and SVLM was later amended to include the following language: "This Judgment does not resolve the issue of whether access rights to the parcel of land represented on the foreclosed-out Plat as Lot [44] exist by virtue of prescription, necessity, or easement by implication." SVHS appealed, arguing that First Federal's release of Lot 44 to the Davises necessarily included the common area and access easement rights described in the plat and CC & Rs recorded by Clarendon and that as successors in interest to the Davises, it owns an interest in the common area and access easements rights. SVHS also argues that under the theory of equitable estoppel First Federal and its successors are estopped from foreclosing on the lot owners' interests in the common area and access rights because First Federal acquiesced in the subdivision plan knowing such rights would be created. Kelsey and SVLM cross-appealed, claiming that they should have been awarded attorney fees in the district court pursuant to sections 12–120(3) and 12–121 of the Idaho Code (I.C.) and that they are entitled to attorney fees on appeal.

## II.

### STANDARD OF REVIEW

■ When this Court reviews the district court's ruling on a motion for summary judg-

ment, it employs the same standard properly employed by the district court when originally ruling on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Normally, both this Court and the district court will liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck*, 127 Idaho at 200, 899 P.2d at 413. However,

[w]here, as in this case, both parties file motions for summary judgment relying on the same facts, issues and theories, the parties essentially stipulate that there is no genuine issue of material fact which would preclude the district court from entering summary judgment. As the trier of fact, the district court is free to arrive at the most probable inferences based upon the evidence before it and grant summary judgment, despite the possibility of conflicting inferences. As the trier of fact, the district court is responsible for resolving the possible conflict between inferences.

*Brown v. Perkins*, 129 Idaho 189, 191–92, 923 P.2d 434, 436–37 (1996) (citations omitted).

## III.

### FIRST FEDERAL'S SECURITY INTEREST IN THE PROPERTY AT THE TIME OF THE RELEASE TO THE DAVISES WAS UNENCUMBERED BY ANY BURDENS OR OBLIGATIONS IMPOSED BY THE SUBDIVISION PLAT AND CC & RS.

■ SVHS contends that First Federal's release to the Davises of its interest in Lot 44 necessarily included the common area and access easement rights created by the subdivision plat and CC & Rs. SVHS points to I.C. § 55–101 which defines real property to include "[t]hat which is appurtenant to land," I.C. § 55–101(3), including "hereditaments, whether corporeal or incorporeal, such as

easements, and every interest in lands." *Hughes v. State,* 80 Idaho 286, 293, 328 P.2d 397, 400 (1958). However, it does not follow from this definition that the release from First Federal included the common area and easement rights described in the plat and CC & Rs recorded by Clarendon.

 "In Idaho, the first recorded conveyances of real property, taken in good faith and for valuable consideration, except leases not exceeding one year, have priority over subsequent purchasers or mortgagees of the same property." *Sun Valley Land & Minerals, Inc. v. Burt,* 123 Idaho 862, 866, 853 P.2d 607, 611 (Ct.App.1993) (citing I.C. § 55–812). Good faith means a party purchased the property without knowing of any adverse claims to the property. *Id.* First Federal recorded its mortgage before the subdivision plat and CC & Rs were recorded, and it purchased its security interest in good faith and for valuable consideration. The fact that First Federal had notice of the plat and the CC & Rs at the time it executed the release does not eliminate its status as a good faith purchaser or disturb the priority of its security interest. When determining whether a party is a bona fide purchaser, (i.e., one who purchases in good faith and for valuable consideration), the Court must look at what notice the party had before and up to the time the party recorded its interest. *Id.* at 867, 853 P.2d at 612. First Federal's knowledge that Clarendon intended to create common area and access rights which would attach to the subdivision lots was not a legally recognizable interest that would constitute an adverse claim on the property. In discussing whether a party had actual or constructive notice in regards to determining its bona fide purchaser status, this Court in *Bear Island Water Ass'n, Inc. v. Brown,* 125 Idaho 717, 874 P.2d 528 (1994), concluded that a party's prior notice of another party's use of a well did not create a real property right in the party using the well. A purchaser's prior notice of another party's use of property does not create any real property right in the using party that would serve as an adverse claim that could defeat the purchaser's status as a bona fide purchaser. *Id.* at 725–26, 874 P.2d at 536–37. Where notice of another party's "use" of property does not create a

property right in the using party, it follows that notice of another party's "intent" to use property in the future would not create a property right in that party. For reasoning applicable to this case, see also *Federal Deposit Ins. Corp. v. Davis,* 82 Or.App. 8, 727 P.2d 133 (1986) (where, at time that bank took note and mortgage, there was nothing more than a bare agreement by owner to give third party a trust deed, that trust deed was not superior to bank's interest as bank could not have any imputed knowledge of prior unrecorded interest which did not exist at the time it took its mortgage). Accordingly, First Federal's interest had priority over the subdivision plat and CC & Rs and was not subject to any burdens or obligations imposed by the plat or CC & Rs.

## IV.

### THE RELEASE OF LOT 44 DID NOT INCLUDE ANY COMMON AREA OR ACCESS EASEMENT RIGHTS.

 Although First Federal's security interest was not subject to the obligations imposed by the plat and CC & Rs, the district court addressed the question of whether First Federal's release of the specifically numbered "Lot 44" impliedly served as First Federal's acknowledgment and consent to the subdivision plan and any rights allegedly created under the plan. The district court determined, however, that the release specifically preserved First Federal's mortgage on all property in the subdivision property other than "Lot 44" with the language: "but said mortgage and the lien thereof is retained as to any other than the above described property." The release did not mention any common area or access easement rights. Accordingly, the district court concluded that the release did not include the release of any common area or access easement rights. The record supports the determination of the district court. The clear language in the release indicates that First Federal was releasing its interest in only "Lot 44" and retaining its mortgage interest in all other property. The release did not, either expressly or by implication, include any common area or access easement rights.

## V.

## THE FACTS DO NOT SUPPORT A CLAIM OF EQUITABLE ESTOPPEL.

The requirements for proper application of quasi or equitable estoppel are that "the person against whom it is sought to be applied has previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine." *KTVB, Inc. v. Boise City*, 94 Idaho 279, 282, 486 P.2d 992, 995 (1971). SVHS argues that even if the release did not include the common area and access easement rights, First Federal should be estopped from foreclosing on the lot owners' interests in the common area and access rights because it had acquiesced in the subdivision plan to create such rights. SVHS claims that First Federal was fully informed of Clarendon's intent to subdivide the property prior to the loan and mortgage and, consequently, equitable estoppel should apply. While SVHS did not make this specific argument below, it did argue that the theories of quasi estoppel and unjust enrichment should apply. Based on the facts of this case, this Court concludes that equitable relief is not warranted.

In arguing that First Federal should be estopped from foreclosing on the lot owners' interests in the common area and access rights, SVHS relies on *Smith v. Heath*, 102 Ill. 130 (1882). In *Smith*, Smith had granted a mortgage to Heath who had loaned him money so that he could construct a residential subdivision. Smith developed the subdivision which included a common area known as "Aldine Square." When Smith defaulted on his loan, Heath foreclosed. The trial court found that the foreclosure encompassed Aldine Square. The Illinois Supreme Court reversed the judgment, finding that the foreclosure did not affect Aldine Square because, among other things, the mortgagee (Heath) had previously released his interests in the lots. The Illinois Supreme Court noted that the mortgagee knew that the property was to be subdivided with most of the lots fronting a common area square and that the mortgagee did not object to the plan. *Id.* at 139. The court also noted that when the mortgagee released his mortgage interest in the various lots, he must have known that individuals were investing in the lots with the understanding that he was releasing his mortgage interest in the square itself. *Id.* at 147. The court concluded that, because the mortgagee acquiesced in and benefited from the plan, he was not in a position to later foreclose on the square. *Id.* at 143–44. The court stated:

Complainant, when he released his mortgage on the lots by their numbers on the plat, must have known parties were investing in them on the understanding he had released his mortgage on the square itself, and on every principle of law he ought to be estopped to deny the legal effect of what he induced others to believe.

*Id.* at 147. SVHS argues that, like the mortgagee in *Smith*, First Federal knew or should have known that the common area played an important role in the lot owners' decisions to purchase. It further argues that if First Federal had any intention of retaining mortgage lien rights in the common area, it should have expressly done so in the release instruments.

*Smith* is not binding on this Court, but in view of SVHS' reliance on the case it is notable that *Smith* is clearly distinguishable from the present case. Unlike the individuals who had purchased lots in *Smith*, the individuals who had purchased lots from Clarendon had notice that their interests were subject to a blanket mortgage held by First Federal. Pursuant to a property report required by the U.S. Department of Housing & Urban Development (HUD), each purchaser was notified prior to purchase that: (1) the subdivision property was burdened with a blanket mortgage in favor of First Federal, (2) the purchaser could lose his or her financial interest in the property if the developer defaulted, "as the purchasers' interest in the lot may be subordinated to that of First Federal Savings and Loan," and (3) in the event of default, First Federal would not be obligated to perform any of Clarendon's agreements with the purchaser. Based on the HUD report, the lot owners purchased their lots with full knowledge of the risks involved, and the purchase prices they paid reflected those risks. Accordingly,

there was no detrimental reliance on behalf of the lot owners, and SVHS' claim of equitable estoppel fails.

## VI.

## KELSEY AND SVLM ARE NOT ENTITLED TO AN AWARD OF ATTORNEY FEES.

Kelsey and SVLM claim that the district court erred in not awarding them attorney fees under I.C. §§ 12–120(3) and 12–121 and that they are entitled to an award of attorney fees on appeal.

### A. Idaho Code § 12–120(3)

Idaho Code § 12–120(3) provides for an award of attorney fees to the prevailing party in a civil action to recover on any commercial transaction. "Commercial transactions," as defined in I.C. § 12–120(3), include all transactions except transactions for personal or household purposes. "Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

Kelsey and SVLM argue that the loan-mortgage transaction between First Federal and Clarendon and the sale of Lot 44 to the Davises are "commercial transactions" which are integral to SVHS' claims and constitute the basis upon which SVHS is attempting to recover. Accordingly, they claim the district court should have awarded them attorney fees under I.C. § 12–120(3) as the prevailing parties.

This Court has previously recognized, however, that an "award of attorney's fees is not warranted [under I.C. § 12–120(3) ] every time a commercial transaction is remotely connected with the case." *Brower*, 117 Idaho at 784, 792 P.2d at 349. The commercial transaction must be integral to the plaintiff's claims and constitute the basis upon which the plaintiff is attempting to recover. *Id.* While the loan-mortgage transaction and the sale of Lot 44 are commercial transactions as defined in I.C. § 12–120(3), they are inciden-

tal to SVHS' claims. This action brought by SVHS is essentially an action whereby a landowner is attempting to enforce covenants against the owner of adjacent property. This case is analogous to holdings by this Court and the Court of Appeals involving the determination of property rights. *See Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990) (action in which landowners sought adjudication of water rights and a permanent restraining order prohibiting the defendant from interfering with their diversion and use of water determined not to be an action based on a commercial transaction as defined in I.C. § 12–120(3)); *Chen v. Conway*, 121 Idaho 1006, 829 P.2d 1355 (Ct.App. 1991) (quiet title action involving dispute over the existence of a prescriptive easement determined not to be a commercial transaction under I.C. § 12–120(3)); *Jerry J. Joseph C.L.U. Ins. Assoc. v. Vaught*, 117 Idaho 555, 789 P.2d 1146 (Ct.App.1990) (attorney fees denied under I.C. § 12–120(3) in action where property owner sought a judgment compelling adjoining property owners to reimburse it for irrigation assessments, to record an instrument establishing an access easement, and to remove a fence hindering its use of the easement and where after settlement, adjoining property owners breached the settlement agreement). The present action is primarily a property dispute to determine ownership and easement rights and does not fall within the meaning of a commercial transaction in I.C. § 12–120(3). Therefore, the district court properly denied Kelsey and SVLM's claim for attorney fees under this provision.

### B. Idaho Code § 12–121

"An award of attorney fees is not a matter of right and a court should only award fees pursuant to § 12–121 when it is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Owner–Operator Indep. Drivers Ass'n, Inc. v. PUC*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994). When a party pursues an action which contains fairly debatable issues, the action is not considered to be frivolous and without foundation. *Lowery v. Board of*

*County Comm'rs,* 115 Idaho 64, 764 P.2d 431 (Ct.App.1988). The decision whether to award attorney fees under I.C. § 12–121 rests in the sound discretion of the trial court and will only be reversed where there is an abuse of discretion. *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 250, 869 P.2d 554, 567 (1993).

The questions raised in this case involving whether a release of an interest in real property necessarily includes all appurtenant rights to the property or whether equitable estoppel should apply are fairly debatable issues. Accordingly, this action cannot be considered frivolous and without foundation. The district court did not abuse its discretion in denying Kelsey and SVLM's request for attorney fees under I.C. § 12–121.

For the same reasons Kelsey and SVLM are not entitled to an award of attorney fees below, they are not entitled to an award of attorney fees on appeal.

## VII.

## CONCLUSION

The district court's grant of summary judgment in favor of Kelsey and SVLM is affirmed. Kelsey and SVLM are awarded costs on appeal, not including attorney fees.

TROUT, C.J., JOHNSON, WALTERS, JJ., and WOODLAND, J. Pro Tem, concur.