**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 46797**

| | | |
|---|---|---|
| DENNIS B. FITZPATRICK and TRACY L. FITZPATRICK, TRUSTEES OF THE FITZPATRICK REVOCABLE TRUST, a revocable living trust, | ) ) ) ) ) | |
| Plaintiffs-Counterdefendants-Appellants-Cross Respondents, | ) ) ) | |
| v. | ) ) | |
| ALAN KENT and SHERRY KENT, TRUSTEES OF THE ALAN & SHERRY KENT LIVING TRUST DATED 11/07/2003, a revocable living trust; ALAN and SHERRY KENT, husband and wife, | ) ) ) ) ) ) | Boise, December 2019 Term<br><br>Opinion Filed: February 21, 2020<br><br>Karel A. Lehrman, Clerk |
| Defendants-Counterclaimants-Respondents-Cross Appellants, | ) ) ) | |
| and | ) ) | |
| JOHN AND JANE DOES 1-10, | ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The judgment of the district court is <u>affirmed</u>.

Pickens Law, P.A., Boise, for appellants. Terri Pickens Manweiler argued.

Varin Wardwell, LLC, Boise, for respondents. Dylan Lawrence argued.

———————————————

BRODY, Justice.

This appeal arises from a dispute between neighbors over the validity of an easement. In 1997, the Fitzpatricks bought two adjacent lots. In 2016, while they still owned both lots, they recorded an easement that granted the owners of the first lot (themselves) the right to maintain,

1

repair, and improve a portion of the second lot. They then sold the second lot to the Kents. Two years later, the Kents allegedly made certain modifications to the easement area that the Fitzpatricks opposed. The Fitzpatricks claimed that the easement precluded the Kents from making the modifications, but the Kents asserted that the easement was unenforceable. The Fitzpatricks and Kents filed cross-complaints in district court, each seeking to quiet title to the easement area.

The district court granted the Kents' motion for summary judgment after concluding that the easement was invalid under the merger doctrine. The district court granted costs to the Kents but denied them attorney fees under Idaho Code section 12-121. The Fitzpatricks appealed the district court's summary judgment decision and the Kents cross-appealed the district court's denial of their request for attorney fees. We affirm the decisions of the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Dennis and Tracy Fitzpatrick bought two adjacent lots (the "Fitzpatrick Property" and the "Kent Property") in the Widgeon Lakes Estates Subdivision in Ada County. Both lots border the same pond. The Fitzpatricks later transferred their interest in the lots to themselves as trustees of the Fitzpatrick Revocable Trust. The Fitzpatricks installed landscaping and an irrigation system near the pond on the Fitzpatrick Property, and also constructed a vinyl fence over portions of both lots.

While they still owned both lots, the Fitzpatricks executed and recorded a nonexclusive easement (the "Easement Agreement"). The Easement Agreement states that the easement "is granted for the use, benefit, and enjoyment of the pond, the property surrounding the pond as set forth in *Exhibit C*, and also for the right to maintain, repair, and improve [the easement area]." The Fitzpatrick Revocable Trust was both the grantor and the grantee. On the same day that the easement was recorded, the Fitzpatricks listed the Kent Property for sale. The listing stated, "This property has a recorded easement on north side. New owner will be allowed view but vinyl fencing and pond will remain attached to and maintained by adjacent property."

Three months later, the Fitzpatricks entered into a real estate purchase and sale agreement for the Kent Property with Alan and Sherry Kent. The agreement stated, "Buyers are aware of a recorded easement on the north side of the property." The Fitzpatricks assert that the listing agent told Alan Kent that the easement area "was controlled and maintained as part of the Fitzpatrick Property," and that the President of the Widgeon Lakes Estates Subdivision Homeowner's

2

Association told the Kents that they must comply with the terms and conditions of the Easement Agreement after one or both of them met with him to inquire about their rights to the easement area. The parties closed the sale. The deed granted by the Fitzpatricks to the Kents states that the Kents took title to the Kent Property "subject to all . . . easements." Like the Fitzpatricks, the Kents own their lot through a trust, of which they are the trustees.

Approximately a year after closing, the Fitzpatricks and the Kents had a dispute over the Easement Agreement. The Fitzpatricks assert that the Kents began making modifications to the easement area, including modifying the irrigation system that the Fitzpatricks had installed. The Kents deny making such modifications. The Fitzpatricks, through their attorney, sent the Kents a cease and desist letter that cited the Easement Agreement. The Fitzpatricks also "reinstalled" an irrigation system and some landscaping in the easement area "to replace the irrigation system and landscaping removed by the Kents." The Kents responded by sending the Fitzpatricks a letter, through the Kents' attorney, objecting to the Fitzpatricks' modifications to the easement area and asserting that the Easement Agreement was unenforceable. The Kents also threatened to remove the fence, undo the Fitzpatricks' modifications, and return the irrigation system to its original condition.

The Fitzpatricks filed a complaint in district court seeking "a judgment quieting title to confirm [their] property rights in [the easement area]," citing the Easement Agreement. The complaint also sought to enjoin the Kents from any future interference with the Fitzpatricks' easement rights, and sought damages based on the cost of installing the new irrigation system. The Kents filed an answer and counterclaim seeking a declaratory judgment that the Easement Agreement was void and unenforceable. The Kents also sought to quiet title to the Kent Property and requested damages based on the Fitzpatricks' "continuing trespasses upon the Kent property."

Soon afterwards, each party moved for summary judgment. The district court denied the Fitzpatricks' motion, and granted in part and denied in part the Kents' motion. Specifically, it granted the Kents' motion as to their declaratory judgment and quiet title counterclaims, "entitling [the Kents] to a declaration that the [Easement Agreement] is void and to a judgment quieting title in the Kent Property free and clear of any claim or interest of the Fitzpatricks." The district court denied the Kents' motion only as to their claim for trespass and ejectment, on the

3

grounds that no evidence or argument was directed toward this claim and the ruling on the validity of the Easement Agreement did not resolve this claim.

The parties filed a stipulation and joint motion for entry of final judgment. The Fitzpatricks reserved the right to appeal the district court's summary judgment order and judgment, as well as any costs or attorney fees awarded to the Kents, and the Kents reserved the right to seek costs and attorney fees. The stipulation also stated that if the Fitzpatricks did not appeal the district court's summary judgment order or if the order was affirmed on appeal, the parties would execute and record a Termination of Easement Agreement, attached as Exhibit B to the stipulation. The proposed final judgment reflected the district court's memorandum decision and order except that it stated that the Kents' claim for trespass/ejectment would be granted. The same day, the district court issued an order approving the stipulation and joint motion for entry of final judgment, and issued a corresponding judgment. A week later, the Fitzpatricks filed a timely notice of appeal.

The Kents then filed a Verified Memorandum of Costs, Disbursements, and Attorneys' Fees, which the Fitzpatricks opposed. The Kents sought $136 in costs, as well as $30,450 in attorney fees pursuant to Idaho Code section 12-121. The district court awarded the Kents' unopposed request for $136 in costs but denied their request for attorney fees, and entered an amended judgment in accordance with its decision. The Kents filed a timely notice of cross-appeal on the issue of attorney fees.

## II.   STANDARD OF REVIEW

Our standard of review in a summary judgment case is well understood:

> In an appeal from an order granting summary judgment, the Court applies the same standard of review as that used by the district court when originally ruling on the motion. The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The determination is to be based on the pleadings, depositions, and admissions on file, together with the affidavits, if any. When the district court is the trier of fact, it is entitled to arrive at the most probable inferences based upon the evidence properly before it. This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences.

*In re CSRBA Case No. 49576 Subcase No. 91-7755*, 165 Idaho 517, 448 P.3d 322, 334–35 (2019) (citations and quotation marks omitted).

4

## III. ANALYSIS

### A. The district court did not err in concluding that the Easement Agreement is invalid.

#### 1. The Easement Agreement is invalid because one cannot have an easement in one's own lands.

The district court concluded that the Kents were entitled to summary judgment because the Easement Agreement is invalid under the merger doctrine. The district court first explained that the merger doctrine "provides that when the land burdened by the easement and the land benefited by the easement come into common ownership, the need for the easement is destroyed and the easement is extinguished" (citing *Ulrich v. Bach*, 155 Idaho 249, 251 n.1, 308 P.3d 1232, 1234 n.1 (2013)). The district court reasoned that although Idaho's appellate courts had not yet had occasion to apply the merger doctrine in a situation in which a landowner attempts to grant an easement across his own land, the merger doctrine also applied in this situation because "an easement is defined as a right in the lands of another, and therefore one cannot have an easement in his own lands" (citing *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 420, 283 P.3d 728, 737 (2012)). "Since one cannot have an easement in his own lands," the district court concluded, "one cannot validly grant himself an easement that burdens one of his properties and benefits another"—"[s]uch an easement is void ab initio, immediately extinguished by merger."

On appeal, the Fitzpatricks argue that this Court should recognize an "intent" exception to the merger doctrine. Specifically, they argue that the merger doctrine should not extinguish an easement when the landowner did not intend for it to do so. They ask the Court to conclude that because the Fitzpatricks did not intend for the Easement Agreement to be extinguished under the merger doctrine, it was not extinguished. They cite decisions from Washington and Pennsylvania that, they contend, show that those jurisdictions have adopted intent exceptions to the merger doctrine.

We conclude that the district court correctly ruled that the Easement Agreement is invalid. The district court recognized the rule of law set forth in *Capstar* that one cannot have an easement in one's own lands. It went one step further by applying this rule through the lens of the merger doctrine, reasoning that together, they instantly extinguish any easement created by a landowner across his own lands. We need not go so far. *Capstar*'s prohibition of easements in one's own lands controls this case. Application of the merger doctrine gave rise to the Fitzpatricks' arguments about exceptions to the merger doctrine, which we need not consider given the clear applicability of *Capstar*. No easement was ever created here because there was

5

unity of title from the very beginning. Therefore, the district court did not err in concluding that the Easement Agreement is invalid. Because we hold that the merger doctrine does not apply to the facts of this case, we do not address the merits of the Fitzpatricks' other arguments raising exceptions to the merger doctrine.

## 2. The Kents did not fail to provide evidentiary support for their summary judgment arguments.

In their brief opposing the Kents' motion for summary judgment, the Fitzpatricks argued that the Kents' motion for summary judgment should be denied because they did not file any supporting declarations or affidavits. The district court disagreed, concluding that the Kents' citations to allegations in the Fitzpatricks' complaint that were admitted in the Kents' answer were sufficient to make the allegations established fact as between the parties. The district court also noted that, under Idaho Rule of Civil Procedure 56(c)(3), a court "may consider the entire evidentiary record, including the nonmovant's evidence, and even evidence to which no party cited the Court."

On appeal, the Fitzpatricks again argue that the Kents' motion for summary judgment should not have been granted because it was not accompanied by supporting declarations or affidavits. They also argue that their cross-motion for summary judgment should have been granted because the Kents failed to raise any genuine issue of material fact to dispute it. The Fitzpatricks cite Idaho Rule of Civil Procedure 56(c)(1) for the proposition that "[t]he Kents cannot rest on the pleadings alone, but rather, must set forth concrete factual issues through affidavits or declarations." They also cite *Golay v. Loomis*, 118 Idaho 387, 797 P.2d 95 (1990) for the proposition that "Idaho courts have also held that in the absence of affidavits and opposed only by an unverified answer, summary judgment motions are essentially uncontested." Finally, they cite *Riverside Development Co. v. Richie*, 103 Idaho 515, 650 P.2d 657 (1982) for the proposition that "this Court is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts," and that "[i]n doing so, this Court can determine as a matter of law that the Fitzpatricks have a valid and enforceable easement, that they have a right to use, maintain, repair, and improve the [easement area], and, that the Kents are not allowed to obstruct the Fitzpatricks['] use of the [easement area]."

The Fitzpatricks' arguments are misplaced. First, Rule 56(c)(1) is inapplicable here. Rule 56(c)(1) is titled "Supporting Factual Positions" and states,

A party asserting that a *fact* cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

I.R.C.P. 56(c)(1) (emphasis added). This Rule is inapplicable because the Kents were not asserting that a *fact* could not be or was genuinely disputed. Rather, they were arguing that they were entitled to relief as a matter of law based on the undisputed facts asserted by the Fitzpatricks—specifically, the content of the Easement Agreement. This is exactly the kind of argument that Rule 56(a) requires in order for a party to succeed on summary judgment: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

Second, the Kents did not need to offer disputed facts in order to oppose the Fitzpatricks' cross-motion for summary judgment. Because a party moving for summary judgment must show that there is no genuine dispute of material fact *and* they are entitled to judgment as a matter of law, a party opposing the motion for summary judgment can defeat the motion *either* by showing that there is a genuine dispute of material fact *or* that the movant is not entitled to judgment based on the undisputed facts. *See* I.R.C.P. 56(a). The Kents did the latter. Furthermore, *Golay* is inapplicable because the Fitzpatricks do not argue that the Kents' answer was unverified.

Third, the Fitzpatricks confuse "inferences" with conclusions of law. A court's ability to draw probable inferences from undisputed facts is distinct from the process of arriving at legal conclusions based on facts and inferences derived from those facts. The Fitzpatricks do not explain why a ruling by this Court that their easement is valid would be an inference rather than a legal conclusion. For these reasons, the Kents did not fail to provide evidentiary support for their summary judgment arguments.

### 3. The Fitzpatricks failed to support their easement by reservation, restrictive covenant, and equitable servitude arguments with argument or authority.

In their summary judgment briefing before the district court, the Fitzpatricks also argued that the Easement Agreement created not only an easement, but also an easement by reservation, restrictive covenant, and equitable servitude. The district court rejected these arguments.

7

Regarding the restrictive covenant and equitable servitude arguments, the district court stated that "[t]he Fitzpatricks appear to use the terms 'easement,' 'equitable servitude,' and 'real covenant' interchangeably" but concluded it was unnecessary to determine which of those terms best described the Easement Agreement because the merger doctrine applies to all three. Regarding the easement by reservation argument, the district court explained that an easement by reservation must actually create reserved easement rights, not preserve preexisting ones. Additionally, nothing in the sale contract or deed identified any reserved easement rights.

On appeal, the Fitzpatricks again argue that the Easement Agreement "also serves as a restrictive covenant" against the Kent Property. They also argue that the Easement Agreement is an equitable servitude, although they do so in the context of their argument regarding estoppel. Additionally, they make one reference to easements by reservation, stating, "The Easement Agreement is an express easement by reservation; the Fitzpatricks created the Pond Easement purely to reserve a portion of Lot 4 prior to selling it."

The Fitzpatricks have waived their restrictive covenant and equitable servitude arguments on appeal due to their failure to provide argument and authority showing that any equitable servitude or restrictive covenant was created in this case. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("We will not consider an issue not supported by argument and authority in the opening brief."). The Fitzpatricks explain how covenants compare to easements, describe how restrictive covenants should be interpreted, and quote a decision discussing the enforceability of covenants, but fail to explain how a restrictive covenant was created in this case beyond making the conclusory statement that "[i]n this case, the Easement Agreement was drafted as an affirmative easement <u>and</u> a restrictive covenant encumbering Lot 4." Similarly, they define the term "equitable servitude" and quote a decision discussing how equitable servitudes may arise and whether they run to successors in interest, but fail to explain how an equitable servitude was created here beyond making the conclusory statement that "[a]n enforceable equitable servitude encumbers [the Kent Property] for the use and benefit of [the Fitzpatrick Property]." Likewise, the Fitzpatricks' argument that the Easement Agreement is an express easement by reservation fails for lack of argument and authority showing *why* the Easement Agreement is an easement by reservation. *See id.*

8

### 4. The Court will not address the Fitzpatricks' quasi-estoppel argument because it was raised for the first time on appeal.

The Fitzpatricks also argue that the Kents are estopped from challenging the validity of the Easement Agreement. The Fitzpatricks have waived this argument because it was raised for the first time on appeal. *In re Prefiling Order Declaring Vexatious Litigant, Pursuant to I.C.A.R. 59.*, 164 Idaho 586, 592, 434 P.3d 190, 196 (2019). The purpose of this rule "is so that there are no unfair surprises to opponents and the trial courts can rule, thus forming a justiciable issue." *State v. Gibson*, 164 Idaho 420, 423, 431 P.3d 255, 258 (2018).

The Fitzpatricks never used the term "quasi-estoppel" before filing their reply brief on appeal. In the proceedings before the district court, they mentioned estoppel twice: first using the general term "estoppel" as part of their fourth affirmative defense, where they alleged that the Kents were "barred from recovery under the doctrine of *estoppel*, waiver, laches, and unclean hands" (emphasis added), and then using the term "judicial estoppel" at the very end of the hearing on the parties' cross motions for summary judgment. This hearing took place after all summary judgment briefing had been completed. They cited *West Wood Investments, Inc. v. Acord*, 141 Idaho 75, 106 P.3d 401 (2005) in their cross motion for summary judgment, but not to the part of that opinion that discusses estoppel.

Because the Fitzpatricks' quasi-estoppel argument was not developed or even mentioned in their summary judgment briefing, and their only references to any estoppel argument were the brief ones described above, which lack any discussion of how the elements of quasi-estoppel have been met, allowing the Fitzpatricks to raise quasi-estoppel on appeal would cause "unfair surprise" to the Kents and result in a decision on an issue that the district court had no opportunity to decide in the first instance. *See Gibson*, 164 Idaho at 423, 431 P.3d at 258. Therefore, the Fitzpatricks have waived the issue of quasi-estoppel.

### 5. It is irrelevant whether the Kents had notice of the Easement Agreement.

As they did before the district court, the Fitzpatricks argue that because the Kents had "constructive and actual notice" of the Easement Agreement, "they took the land subject to the easement." The district court dismissed this argument, reasoning:

> [I]f the recorded facts at the time of the purchase show that the easement is void, then the purchaser merely has notice of a void easement. This notice isn't consequential and doesn't reinvigorate the void easement. It is incumbent on the seller, if the seller wishes to retain comparable easement rights, to provide in the transaction documents for a reservation or new grant of them.

The district court is correct, and the authority cited by the Fitzpatricks is not to the contrary. The Fitzpatricks cite various decisions and recording statutes to show that the Kents had notice of the Easement Agreement because it was recorded, and to suggest that the Kents were not "bona fide purchasers" of the Kent property.

First, the recording statutes are not applicable here. Recording statutes affect the rights of subsequent purchasers of property, not the validity of the conveyance between the original grantor and grantee. *See* Idaho Code Ann. § 55-815 ("An unrecorded instrument is valid as between the parties thereto and those who have notice thereof."); 66 Am. Jur. 2d *Records and Recording Laws* § 40 ("[T]he purpose of a recording statute is to provide protection to subsequent purchasers, lessees, and mortgagees."). *See also The David & Marvel Benton Trust v. McCarty*, 161 Idaho 145, 151, 384 P.3d 392, 398 (2016) (holding that Idaho Code section 55-606, a recording statute cited by the Fitzpatricks, "explicitly applies only where there has been 'a grant or conveyance'"—"[c]onversely, where no grant or conveyance ever legally occurred, Idaho Code section 55-606 is not applicable").

Second, even if the recording statutes were applicable here, several decisions of this Court interpreting recording statutes support the proposition that a grantee's knowledge of a void conveyance does not create a property right in the grantor. For example, in *Bear Island Water Association, Inc. v. Brown*, this Court held that the plaintiff had not obtained an ownership or easement interest in a well on the defendants' property, and that even assuming the defendants had notice of the plaintiff's use of the well, that notice did not create any real property right in the plaintiff such that the defendants' bona fide purchaser status was defeated. 125 Idaho 717, 725-26, 874 P.2d 528, 536-37 (1994). *See also Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 661, 962 P.2d 1041, 1045 (1998) (extending *Bear Island* to conclude that that "notice of another party's 'intent' to use property in the future would not create a property right in that party"); *McCarty*, 161 Idaho at 150, 384 P.3d at 398 (holding that Idaho Code section 55-606 "does not, and has never been interpreted to, bar grantors and their successors from challenging the enforceability of deeds or liens").

Third, the Fitzpatricks' notice argument fails even if the Kents had actual notice of the Easement Agreement in addition to constructive notice based on the recording of the Easement Agreement. It is true that both constructive and actual notice may affect the rights of subsequent purchasers. *See Kalange v. Rencher*, 136 Idaho 192, 196, 30 P.3d 970, 974 (2001) ("[A]ctual

10

knowledge of a prior encumbrance by a subsequent purchaser or mortgagee renders his interest inferior to that encumbrance though not recorded."). Additionally, the Fitzpatricks accurately cite *Checketts v. Thompson*, 65 Idaho 715, 721, 152 P.2d 585, 587 (1944) for the proposition that "[o]ne who purchases land expressly subject to an easement, or with notice, actual or constructive, that it is burdened with an existing easement, takes the land subject to the easement." However, the Fitzpatricks do not explain why such notice would validate an easement that had, up until that point, been invalid. The easement was void from the beginning and the Kents' knowledge of the void easement did nothing to change that. Therefore, the district court did not err in dismissing the Fitzpatricks' notice argument.

6. **It is unnecessary to address whether the Fitzpatricks have a right to maintain the easement property, whether the Kents may obstruct the Fitzpatricks' use of the easement, or whether the Easement Agreement is ambiguous.**

Because the Easement Agreement is invalid, it is unnecessary to address the Fitzpatricks' arguments that they have a right to maintain the easement property, that the Kents may not obstruct the Fitzpatricks' use of the easement, or that the Easement Agreement is unambiguous. These arguments are predicated on the validity of the Easement Agreement. As explained above, the Easement Agreement was never valid.

B. **The district court did not abuse its discretion when it denied the Kents' request for attorney fees.**

The Kents have cross-appealed the district court's denial of attorney fees. The district court denied the request under Idaho Code section 12-121 on the grounds that the Fitzpatricks made a good faith argument for an exception to the merger doctrine, which the district court described as "the very narrow issue in this case." The Kents cite *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 329 P.3d 1072 (2014) and *Petrus Family Tr. Dated May 1, 1991 v. Kirk*, 163 Idaho 490, 415 P.3d 358 (2018) for the proposition that "it is appropriate for district courts to apportion attorneys' fees between claims that satisfy Section 12-121 standards and those that do not." Therefore, the Kents argue, it was error for the district court to fail to consider the Kents' argument that an award of attorney fees was appropriate because of "the Fitzpatricks' assertion of various inapplicable legal theories in a case involving a narrow legal issue." We disagree.

We review a district court's award of attorney fees and costs for abuse of discretion. *Galvin v. City of Middleton*, 164 Idaho 642, 645, 434 P.3d 817, 820 (2019). Under the abuse of

discretion standard, we consider whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Idaho Code section 12-121 allows a court to award attorney fees to the prevailing party when it finds that the case was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121.

The district court did not abuse its discretion by denying the Kents' request for attorney fees. The Kents are correct that attorney fees under Idaho Code section 12-121 may be apportioned, in that a district court may award fees for frivolous claims or issues while declining to award them in connection with legitimate ones. *Galvin v. City of Middleton*, 164 Idaho 642, 648, 434 P.3d 817, 823 (2019). Additionally, it is no longer enough for non-prevailing party to have raised a single legitimate issue in order to be immunized from attorney fees under Idaho Code section 12-121. *Id.* However, a district court is not *required* to apportion fees. Courts take a holistic view to determine whether the standard under Idaho Code section 12-121 has been met. *Id.* That is what the district court did here. It determined that the Fitzpatricks' case centered around its argument for an exception to the merger doctrine, and that the Fitzpatricks made this argument in good faith. Therefore, the district court did not abuse its discretion in denying the Kents' request for attorney fees.

### C. No attorney fees on appeal.

The Kents also request an award of attorney fees on appeal pursuant to Idaho Code section 12-121. We decline to award attorney fees on appeal because, like the district court, we find that the Fitzpatricks' arguments were made in good faith.

## IV.    CONCLUSION

We affirm the district court's judgment. We also affirm the district court's denial of the Kents' request for attorney fees, and decline to award attorney fees on appeal to either party. As each party prevailed in part, neither is awarded costs on appeal. *Papin v. Papin*, 166 Idaho 9, ___, 454 P.3d 1092, 1126 (2019).


Chief Justice BURDICK, and Justices BEVAN, STEGNER, and MOELLER CONCUR.