16 P.3d 263

Tracy BAXTER and Sharon Baxter, husband and wife, Plaintiffs–Appellants,

v.

James E. CRANEY and Darlene (Dollie) Craney, husband and wife, Defendants–Respondents.

No. 25549.

Supreme Court of Idaho.
Idaho Falls, September 2000 Term.

Dec. 15, 2000.

Myers, Thomsen & Larson, LLP, Pocatello, and Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for appellants. A. Bruce Larson argued.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for respondents. Randall C. Budge argued.

WALTERS, Justice

This action was commenced by Tracy and Sharon Baxter against their neighbors, James and Darlene Craney, to quiet title to certain real property. The district court granted summary judgment in favor of the Craneys upon the Baxters' theories of title by adverse possession and title through boundary by agreement. After a trial before the court without a jury, the district court also found in favor of the Craneys and against the Baxters on a claim of easement by prescription. The district court then entered an order awarding attorney fees and costs to the Craneys as the prevailing party.

For reasons to follow, this Court affirms the order granting summary judgment on the adverse possession claim, but we vacate the order for judgment on the theory of boundary by agreement. We also affirm the judgment denying relief on the Baxters' claim to an easement by prescription. Final-ly, we vacate the award of attorney fees and costs in favor of the Craneys, and we remand the action for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Tracy and Sharon Baxter and James and Darlene Craney are ranchers who own adjacent parcels of real property in Bear Lake County. The Craneys and the Baxters share a common boundary of approximately one-quarter mile in length. The Craneys purchased their land in 1996 and subsequently removed a portion of a fence located between the two properties. The Baxters contend that the fence marks the actual boundary between the two parcels. The Craneys, on the other hand, contend that the fence was put up for convenience purposes and was only intended to keep cattle from wandering onto a portion of their land. They claim the range line to the east of the fence forms the boundary between the two properties as established by a number of surveys dating back to 1882.

The Baxters filed this action against the Craneys in November of 1997, claiming ownership of the land east of the fence but west of the range line under the doctrine of boundary by agreement or by adverse possession. The Baxters alternatively claimed a prescriptive easement to cross the land lying to the east of the fence for the purpose of reaching a spring to water their livestock. Later, the Baxters attempted to amend their complaint to join the Bureau of Land Management (BLM) as a defendant in the action, asserting that the BLM was an integral party. The district court, however, refused to allow the Baxters to add the BLM.

The district court granted summary judgment in favor of the Craneys on the issues of boundary by agreement and adverse possession. The court concluded that the Baxters failed to present genuine issues of material fact regarding the existence of a boundary agreement between Tracy Baxter and Grant Esterholdt, the Craneys' predecessor in interest, or the payment of taxes as is required for adverse possession. A trial was held on the issue of whether the Baxters acquired a

prescriptive easement to use the land east of the fence for stock watering. The district court found that the Baxters failed to prove the elements required for a prescriptive easement and awarded costs and attorney fees to the Craneys.

## ISSUES ON APPEAL

The Baxters raise the following issues on appeal:

1. Did the District Court properly exercise its discretion in denying the Baxters' motion to amend their complaint to add the Bureau of Land Management as a party?

2. Did the District Court properly grant summary judgment dismissing the Baxters' adverse possession claim?

3. Did the District Court properly grant summary judgment dismissing the Baxters' claim of boundary by agreement?

4. Was the District Court's denial of the Baxters' prescriptive easement claim at trial based on substantial and competent evidence?

5. Did the District Court properly award attorney fees and costs to the Craneys?

## ANALYSIS

### A. Motion to Amend

 A trial court's decision to deny an amendment to pleadings is reviewed by this Court under an abuse of discretion standard. *See Cook v. State Dep't of Transp.*, 133 Idaho 288, 296, 985 P.2d 1150, 1158 (1999). In determining whether the trial court has abused its discretion, this Court applies the three-factor test articulated in *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *See id.* at 94, 803 P.2d at 1000.

Rule 15(a) of the Idaho Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." *Id. See also Cook*, 133 Idaho at 296, 985 P.2d at 1157. This Court, on a number of occasions, however, has upheld trial court decisions to deny the plaintiff's amended complaint motion. *See Dairy Equip. Co. of Utah v. Boehme*, 92 Idaho 301, 304, 442 P.2d 437, 440 (1968) (holding no abuse of discretion when the amended complaint was filed five days prior to trial); *Jones v. Watson*, 98 Idaho 606, 610, 570 P.2d 284, 288 (1977) (finding no abuse of discretion in denying a motion to amend filed on the day of trial); *Cook*, 133 Idaho at 297, 985 P.2d at 1158 (holding no abuse of discretion for denial of an eighth amended complaint filed on the morning of trial).

 The Baxters attempted to amend their complaint approximately five months after the original complaint had been filed and after the date for trial had been set. The district court concluded that given the amount of time and money the Craneys had expended in defending the action, "it would be unfairly prejudicial at this point to allow Plaintiffs the opportunity to add a new party and change the dynamics of the action as it now stands." This illustrates that the district court recognized it had the discretion to allow or deny amendment of the complaint. Because Rule 15(a) requires the district court to allow amendments only when justice requires, the court's decision to deny the amendment was both within the bounds of its discretion and within applicable legal standards. In addition, the district court displayed sound reasoning for its conclusion. As the court noted, the issues the Baxters sought to resolve with the BLM were not directly related to their action against the Craneys. The BLM was neither a necessary party, nor were the Baxters unduly prejudiced by the district court's refusal to allow the Baxters to amend their complaint, as the Baxters are not precluded from bringing a separate action against the BLM. Moreover, the potential likelihood of removal to federal court upon the addition of the federal agency

to the action would result in the Craneys expending more time and money so that issues unrelated to their case could be resolved. Accordingly, this Court holds that the district court did not abuse its discretion when it refused to allow the Baxters to amend their complaint by adding the BLM as a party defendant.

## B. Summary Judgment Motion

### 1. Standard of Review

In an appeal from an order granting summary judgment, this Court's standard of review is the same as the standard used by the district court in passing upon a motion for summary judgment. *See McDonald v. Paine*, 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic Ass'n., Inc.*, 105 Idaho 509, 670 P.2d 1294 (1983). Summary judgment is appropriate if the pleadings, affidavits, and discovery documents on file with the court, read in a light most favorable to the nonmoving party, demonstrate no material issue of fact such that the moving party is entitled to a judgment as a matter of law. *See* I.R.C.P. 56(c); *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988). The burden of proving the absence of material facts is upon the moving party. *See Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969). The adverse party, however, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. Rule 56(e); *see also Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986). In other words, the moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. *See Badell*, 115 Idaho at 102, 765 P.2d at 127 (citing *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). With this standard in mind, we turn to whether the district court erred in dismissing the Baxters' claims to title by adverse possession or by the doctrine of boundary by agreement.

### 2. Adverse Possession

■ Idaho Code section 5–210 defines the elements of adverse possession under an oral claim of right. The statute provides as follows:

> For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:
>
> 1. Where it has been protected by a substantial inclosure.
>
> 2. Where it has been usually cultivated or improved.
>
> Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for a period of five (5) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law.

The burden of showing all of the essential elements of adverse possession is upon the party seeking title thereunder and every element of adverse possession must be proved with clear and satisfactory evidence. *See Lindgren v. Martin*, 130 Idaho 854, 949 P.2d 1061 (1997); *Berg v. Fairman*, 107 Idaho 441, 690 P.2d 896 (1984); *Loomis v. Union Pacific Railroad*, 97 Idaho 341, 544 P.2d 299 (1975).

The Baxters argue that they presented a genuine issue of material fact supporting their claim of adverse possession concerning the property, including the payment of taxes on the disputed parcel. The Craneys, on the other hand, assert that the Baxters failed to fulfill the necessary requirements to establish an adverse use of the land, and in particular, that there is no evidence that they paid the taxes on the disputed property.

■ Generally, Idaho Code section 5–210 requires actual payment of the taxes that are assessed with regard to the disputed property. *See Trappett v. Davis*, 102 Idaho 527,

633 P.2d 592 (1981); *Fry v. Smith*, 91 Idaho 740, 430 P.2d 486 (1967); *White v. Boydstun*, 91 Idaho 615, 428 P.2d 747 (1967); *Larson v. Lindsay*, 80 Idaho 242, 327 P.2d 775 (1958); *Balmer v. Pollak*, 67 Idaho 494, 186 P.2d 217 (1947). As was noted in *Trappett*, this Court has, on a number of occasions, "wrestled" with property disputes involving the payment of taxes. 102 Idaho at 530, 633 P.2d at 595. This has resulted in a significant amount of what the Court termed "judicial gloss" whittling away at a literal application of the tax requirement.[1] *Id.* The tax rule focuses on the actual payment of taxes as demonstrated by the assessor's valuation. The Court, however, "has fashioned several exceptions to the general rule which, when applied, have the effect of satisfying the tax requirement." *Id.* at 530–31, 633 P.2d at 595–96.

The Baxters argue that the "lot number" exception to the tax requirement applies in this case. The lot number exception states that:

> (I)n the case of boundary disputes between contiguous landowners, where one landowner can establish continuous open, notorious and hostile possession of an adjoining strip of his neighbor's land, and taxes are assessed by lot number or by government survey designation, rather than by metes and bounds description, payment of taxes on the lot within which the disputed tract is enclosed satisfies the tax payment requirement of the ... statute.

*Scott v. Gubler*, 95 Idaho 441, 443–44, 511 P.2d 258, 260–61 (1973) (footnote omitted). The Baxters contend that the property in question is described by government survey designation and not by metes and bounds. Without a metes and bounds description, they argue, it is impossible to tell how much property is being assessed with any precision. Thus, they claim the payment of the taxes assessed on their property includes all the property within the inclosure, *i.e.*, on the east side of the fence located between the Craney and Baxter properties.

This argument, however, ignores the rationale behind the lot number exception. As the Court stated in *Flynn v. Allison*, "[t]he primary reason behind the lot number exception is as follows: when taxes are assessed according to some generic description, 'it (is) impossible to determine from the tax assessment record the precise quantum of property being assessed....'" 97 Idaho 618, 621, 549 P.2d 1065, 1068 (1976) (citation omitted). Here, the Craneys submitted the affidavit of the Bear Lake County assessor, which clearly describes the disputed property and confirms that the Craneys and their predecessors in interest paid the taxes on the disputed parcel bounded by the range line. In contrast, the Baxters offered the affidavit of Tracy Baxter. This affidavit, however, which comprises the Baxters' sole piece of evidence, merely states that Baxter paid the taxes on his property. There is neither any indication as to the extent of the Baxters' property nor evidence as to what parcels of property Baxter paid taxes on. Therefore, the affidavit, even when viewed in a light most favorable to the Baxters, fails to establish a genuine issue of material fact on the required payment of taxes and is insufficient to overcome the Craneys' motion for summary judgment on this issue.

### 3. Boundary by Agreement

The doctrine of boundary by agreement has long been established in Idaho law. To have a boundary by agreement, the location of the true boundary line must be uncertain or disputed and there must be a subsequent agreement fixing the boundary. *See Cameron v. Neal*, 130 Idaho 898, 901, 950 P.2d 1237, 1240 (1997); *Wells v. Williamson*, 118 Idaho 37, 41, 794 P.2d 626, 630 (1990). The agreement need not be express, but may be implied by the surrounding circumstances and conduct of the parties. *See Neal*, 130 Idaho at 901, 950 P.2d at 1240; *Williamson*, 118 Idaho at 41, 794 P.2d at 630. The Craneys assert that the Baxters cannot show that the boundary line between their respective properties is uncertain or has been disputed in the past, or that there has been any sort of agreement fixing the boundary. In

---

**1.** The *Trappett* Court notes that "a good deal of the judicial gloss has evolved mechanically and without benefit of supporting rationale, a criticism which might well be leveled at the tax payment requirement itself." *Id.* at 530, 633 P.2d at 595.

support of their position, the Craneys presented an affidavit by Ivan Kunz who said that his father had homesteaded the Craney property in the early 1900's; that he and his brother had helped his father install the fence prior to 1940 for the purpose of keeping cattle from wandering on to their meadow; and that the fence was not intended or agreed to establish a boundary line. The Baxters, on the other hand, represent that Tracy Baxter and Grant Esterholdt, the Craneys' predecessor in interest, had an agreement as to the location of the boundary between their adjoining properties. The Baxters contend that the actual location of the boundary line was uncertain for a considerable amount of time and that Baxter and Esterholdt orally agreed that the fence constituted the boundary between their properties.

In support of their argument, the Baxters rely in part on Tracy Baxter's affidavit. In the affidavit, Baxter relates two separate conversations with Esterholdt—one in 1991 and another in 1992—where Esterholdt purportedly acknowledged that the fence line constituted the boundary between their properties. When examining Baxter's affidavit, however, the district court noted that it was "uncomfortable giving serious credibility to portions of Mr. Baxter's affidavit given their hearsay nature."

The Baxters also offered the affidavits of Marcia Singleton, who is Esterholdt's daughter, and Henry and Lee Rigby, whose father owned the Craneys' land at one time. Each of these affidavits to some degree supports the Baxters' contention that the fence line constituted the boundary between the two parcels. Singleton states that her father considered the fence to be the boundary. She also states that she assumed that the fence line was the boundary. The Rigbys, on the other hand, both state that the fence was not constructed for convenience purposes, but was instead treated as a boundary between the two properties. The district court, however, again commented on the affidavits, stating that it could not "in good conscience give [them] a great deal of credibility."

 We conclude that the district court erred by considering the credibility of the affidavits. Although affidavits must set forth facts that would be admissible as evidence, see I.R.C.P. Rule 56(e), it is not proper for the trial judge to assess the credibility of an affiant at the summary judgment stage when credibility can be tested in court before the trier of fact. See Hines v. Hines, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997); Sohn v. Foley 125 Idaho 168, 171, 868 P.2d 496, 499 (Ct.App.1994). Because the affidavits are sufficient to raise a genuine issue of material fact as to the presence of a boundary by agreement, we reverse the district court's order granting summary judgment to the Craneys and remand the case for further proceedings on that issue.

## C. Prescriptive Easement Claim at Trial

### 1. Standard of Review

 Appellate review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. See Conley v. Whittlesey, 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999); Alumet v. Bear Lake Grazing Co., 119 Idaho 946, 812 P.2d 253 (1991). A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. See Lindgren v. Martin, 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp., 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. See Abbott v. Nampa School Dist. No. 131, 119 Idaho 544, 808 P.2d 1289 (1991); I.R.C.P. 52(a). Findings of fact that are based on substantial evidence, even if the evidence is conflicting, will not be overturned on appeal. See Hunter v. Shields, 131 Idaho 148, 953 P.2d 588 (1998). However, we exercise free review over the lower court's conclusions of law to determine whether the trial court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. See Whittlesey, 133 Idaho at 269, 985 P.2d at 1131; Burns v. Alderman, 122 Idaho

749, 752–53, 838 P.2d 878, 881–82 (Ct.App. 1992).

## 2. Prescriptive Easement

In order to establish a private prescriptive easement, a claimant must present reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years. *See* I.C. § 5–203; *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973). The purpose of the requirement that prescriptive use be open and notorious is to give the owner of the servient tenement knowledge and opportunity to assert his rights. The open and notorious use must rise to the level reasonably expected to provide notice of the adverse use to a servient landowner maintaining a reasonable degree of supervision over his premises. *See Kaupp v. City of Hailey*, 110 Idaho 337, 340, 715 P.2d 1007, 1010 (Ct. App.1986) (citations omitted).

The Baxters argue that Esterholdt, the Craneys' predecessor in interest, had actual knowledge that the Baxters' cattle used trails on land east of the fence to reach the spring for water. The district court, however, noting that there was conflicting testimony that the trails were also used by deer and elk wandering off the BLM lands, concluded that the Baxters failed to provide clear and convincing evidence that the trails were sufficient to put Esterholdt on notice of their use as a means for the Baxters' cattle to get to the spring. We agree. An examination of the record establishes that the district court's characterization of the land is accurate. The land in question is essentially a knoll or hill. There are a number of trails present on the hillside, all of which could either be used by the Baxters' cattle or by wild game. The Baxters argue that their testimony at trial delineated the main trails used by their cattle to reach the spring. The record, however, indicates that Esterholdt was ill and was only able to visit the property two or three times per year. Because a landowner need only maintain reasonable supervision over his property, *see Kaupp*, 110 Idaho at 340, 715 P.2d at 1010, we agree with

the district court that the presence of the trails on Esterholdt's land, without more, was insufficient to place Esterholdt on notice of their use by the Baxters' cattle.

In addition, the multiple paths do not show any established right of way on a specific trail. As the Court of Appeals noted in *Roberts v. Swim*, an easement by prescription "requires a showing by the claimant of a line of travel without material change or variation." 117 Idaho 9, 15, 784 P.2d 339, 345 (Ct.App.1989). Travel over a tract of land in various directions and courses for the prescriptive period is thus insufficient to establish a right of way over any particular path. *See id.* Although the Baxters argue that their testimony at trial illustrated the particular trails their cattle were using to reach the spring, their testimony also indicates that the lay of the land makes it difficult, if not impossible, for their cattle to reach the spring without following one of the numerous trails that zigzag the slope leading to the water. As Mr. Baxter himself noted, his cattle were more apt to meander up and down the various trails than to travel in a linear fashion up or down the hillside. It is therefore reasonable to conclude that the Baxters' cattle were not traveling by means of any particular route.

The Baxters alternatively argue that there is no evidence demonstrating how the fence line that separates the two parcels was altered to allow their cattle to reach the spring. They assert that the lack of evidence as to how the use of the disputed property began raises the presumption of open, notorious, and continued use for the statutory period in their favor under I.C. § 5–203, and contend that the burden then shifts to the Craneys, as owners of the property, to show that the use was permissive. *See West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973).

Although it appears reasonable to assume that Baxter himself altered the fence to allow his cattle to reach the spring, it is true that the record does not indicate how or when the fence was moved. There are, however, facts suggesting that even if Esterholdt was aware that the Baxters' cattle

were crossing his land to water at the spring, their use of his property was permissive. The property in question is essentially useless for grazing because of its steep terrain and lack of vegetation. Additionally, Esterholdt did not lose access to the spring when the fence was moved. It is therefore logical to assume that even if Esterholdt was on notice that the Baxters' cattle were crossing his land to reach the spring, he was simply being neighborly by allowing the fence to be moved and giving the Baxters' cattle access to water. Because a prescriptive right cannot be established where the use was permissive, *see Hunter v. Shields,* 131 Idaho 148, 151, 953 P.2d 588, 591 (1998), we reject the Baxters' assertion.

■ The Baxters also contend that the Craneys took possession of the land with knowledge of the easement. As evidence of their knowledge, the Baxters point to testimony that the Craneys inspected the land prior to their purchase and observed the trails. An examination of the relevant testimony in the record, however, merely establishes that the Craneys were aware of the trails at the time of purchase. The Craneys' mere appreciation of the abundant trails, without more, is insufficient to establish that the Craneys were put on notice of a prescriptive easement across their land. Accordingly, because the district court's decision is supported by substantial and competent, although conflicting, evidence, this Court will not disturb its conclusion. *See Hunter,* 131 Idaho 148, 953 P.2d 588 (1998).

### D. Attorney Fees

Finally, we turn to whether the district court erred in awarding attorney fees and costs to the Craneys as claimed by the Baxters in this appeal. Because we remand the case for further proceedings on the question of boundary by agreement, we vacate the award and direct the district court to redetermine the issue of the award of fees and costs upon completion of the proceedings on remand. Nonetheless, we deem it appropriate to address an apparent misperception articulated by the district court with respect to its initial attorney fee determination.

The Craneys requested, and the district court approved, attorney fees pursuant to I.C. § 12–120 together with other costs pursuant to Rule 54(d)(1)(D) of the Idaho Rules of Civil Procedure. The district court noted that both the Baxters and the Craneys are engaged in the businesses of ranching and farming, characterizing each party as being involved in a commercial endeavor. The district court, however, also summarily concluded that the relationship between the two parties was of a commercial nature. This simply is not the case. Idaho Code section 12–120(3) provides that attorney fees may be recovered by the prevailing party in a civil action to recover on "any commercial transaction." *Id.* The term "commercial transaction," as defined in I.C. § 12–120(3), includes all transactions except transactions for personal or household purposes. *See id.* This Court has previously recognized that "[a]ttorney fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Brower v. E.I. DuPont DeNemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

■ The present case is analogous to others decided by this Court and the Court of Appeals involving the determination of property rights. *See Jerry J. Joseph C.L.U. Ins. Assoc. v. Vaught,* 117 Idaho 555, 789 P.2d 1146 (Ct.App.1990) (denying attorney fees under I.C. § 12–120(3) in an action where property owner sought a judgment compelling adjoining property owners to reimburse it for irrigation assessments, to record an instrument establishing an access easement, and to remove a fence hindering its use of the easement and where after settlement, adjoining property owners breached the settlement agreement); *Chen v. Conway,* 121 Idaho 1006, 1012, 829 P.2d 1355, 1361 (Ct. App.), *opinion on review,* 121 Idaho 1000, 829 P.2d 1349 (1992) (determining that a quiet title action involving dispute over the existence of a prescriptive easement was not a commercial transaction under I.C. § 12–120(3)); *Durrant v. Christensen,* 117 Idaho 70, 785 P.2d 634 (1990) (holding that an action in which landowners sought adjudication of water rights and a permanent re-

straining order prohibiting the defendant from interfering with their diversion and use of water determined was not based on a commercial transaction as defined in I.C. § 12–120(3)); *Sun Valley Hot Springs Ranch, Inc. v. Kelsey,* 131 Idaho 657, 962 P.2d 1041 (1998) (concluding that an action to determine ownership and easement rights did not fall within the meaning of a commercial transaction under I.C. 12–120(3) and therefore attorney fees were properly denied). Like the above cases, this action is primarily a dispute over property ownership and easement rights and as such does not fall within the meaning of a commercial transaction as defined in I.C. § 12–120(3) and as applied by the courts.

### E. Conclusion

The order of the district court dismissing the Baxters' claims to title by adverse possession is affirmed, as is the judgment of the district court denying the Baxters' claim to an easement by prescription. We vacate the district court's grant of summary judgment dismissing the Baxters' boundary by agreement claim and remand the case to the district court for further proceedings consistent with this opinion.

We also vacate the order awarding attorney fees and costs to the Craneys, and direct the district court to redetermine the question of the award of attorney fees and costs upon resolution of the claim of boundary by agreement.

No attorney fees or costs are awarded on appeal.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.

