69 P.3d 1035

Edward G. ELLIOTT and Mary
L. Elliott, husband and wife,
Plaintiffs–Respondents,

v.

DARWIN NEIBAUR FARMS, an Idaho
general partnership; Darwin Neibaur
and June Neibaur, husband and wife,
Defendants–Appellants,

and

Green Line Sales, Inc., an Idaho corpora-
tion; Hansen and L. Patricia Hansen,
husband and wife; Darwin P. Neibaur, a
single man, June G. Neibaur, a single
woman; Darwin P. Neibaur; June G.
Neibaur; Steve Neibaur, a.k.a. Burke
Vearl Neibaur; Ira Neibaur, a.k.a. Ira
Lynn Neibaur; Renea Hartley, a.k.a. Re-
nea N. Hartley, Corinne Jones, a.k.a.
Corinne N. Jones, Dana Lee Dorsey,
a.k.a. Dana Lee N. Dorsey; June G.
Neibaur, as Trustee for Burke Vearl
Neibaur and Ira Lynn Neibaur d/b/a
Darwin Neibaur Farms Partnership;
Edward K. Heiner and Zina L. Heiner,
husband and wife; Key Bank Of Idaho,
a banking corporation; Valley Bank, a
banking company; First Security Bank
Of Idaho, N.A., a banking company, De-
fendants.

Nos. 28232, 28233.

Supreme Court of Idaho,
Boise, March 2003 Term.

April 8, 2003.

Rehearing Denied May 29, 2003.

Westburg, McCabe & Collins, Boise, for appellant Darwin Neibaur Farms. P. Larry Westberg argued.

Ling & Robinson, Rupert, for appellants Darwin and June Neibaur. Brent T. Robinson argued.

Charles J. Nicholas, Boise, argued for respondents.

WALTERS, Justice.

This case involves the foreclosure of a mortgage on real property. The district court entered judgment allowing Edward and Mary Elliott to foreclose a mortgage on property owned by Darwin Neibaur Farms, a partnership, over the objection by Neibaur Farms and Darwin and June Neibaur, individually, that the parties' contracts required the Elliotts to foreclose first on property owned by John and Patricia Hansen before foreclosing on the Neibaurs' property. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In October 1982, Edward and Mary Elliott entered into a contract for the sale of the John Deere dealership business and a land

sale contract for the real property that the business was located upon in Burley, Idaho. The buyer was Green Line Sales, Inc. John and Patricia Hansen and Darwin and June Neibaur, among others, were shareholders in Green Line Sales, Inc. Promissory notes were given to the Elliotts and guaranteed by the shareholders. Two mortgages were given to the Elliotts as security for the guarantees made by the shareholders pursuant to the business contract; the Hansens granted a mortgage against real property owned by them, and the Neibaurs granted a mortgage against real property that they owned.

There were two conditions pertaining to the mortgages. First, if the indebtedness on the business sale contract dropped below a certain dollar amount, the Neibaurs' mortgage would be released. Second, in the event that the Elliotts should simultaneously foreclose on the mortgages, the Hansens' property would be sold first to satisfy the debt. If the proceeds from the sale of the Hansens' property were insufficient, the Elliotts would then foreclose on the Neibaurs' property.

The farm economy in the Burley area took a serious downturn in the late 1980's and early 1990's. Efforts were made to keep current with the payments pursuant to the business contract, including a modification agreement in 1991. Despite these efforts, Green Line Sales, Inc., defaulted upon the promissory notes for both the business sale contract and the land sale contract.

The Elliotts demanded full payment on the notes in May 1993 and initiated a single action against the Hansens and the Neibaurs to foreclose on both mortgages. The Elliotts and the Hansens later entered into a stipulation whereby the Hansens would pay the Elliotts at least half of the amounts owed on the promissory notes, in exchange for the Hansens' property not being sold in a foreclosure proceeding. A Stipulation and Order for Sale, Foreclosure of Mortgages and Entry of Judgments, and a Stipulation for Settlement and Order entered into between the Elliotts and the Hansens were filed in March

1994. The Neibaurs were not involved in the negotiations or settlement agreements between the Elliotts and the Hansens.

Following the stipulations, the Neibaurs filed a motion for summary judgment alleging a statute of limitation defense and the absence of a contractual condition precedent which required the Elliotts to conduct a foreclosure sale of the Hansens' property prior to foreclosing on the Neibaurs' property. The district court granted partial summary judgment and held that the foreclosure action against the Neibaurs was time-barred. The district court entered an order dismissing the foreclosure action against the Neibaurs and dismissed Neibaur Farms, with prejudice. The district court declined to enter an I.R.C.P. 54(b) certificate on the order at that time but directed that the question of certification be heard by a separate motion.[1] In April 1995, the Elliotts and the Hansens entered into an additional stipulation.

In January 1995, the Neibaurs filed for Chapter 12 relief with the U.S. Bankruptcy Court. During the course of the Chapter 12 proceeding, the Neibaurs disputed the validity of the Elliotts' claim. The bankruptcy court issued its memorandum decision finding that the Neibaurs' defenses of impossibility, impracticability and frustration of purpose did not excuse the Neibaurs' performance, nor did the statute of limitation bar the Elliotts' foreclosure action. The bankruptcy court then dismissed the Neibaurs' petition. The decision of the bankruptcy court was upheld on appeal.

Following the dismissal of the bankruptcy petition, the Elliotts filed a motion for partial summary judgment requesting that the district court rule that all of the Neibaurs' claims and defenses had been adjudicated and disposed of by the bankruptcy court. The Neibaurs filed another motion for partial summary judgment asserting the I.C. § 6–101 'one-action rule' and statute of limitation as grounds. On December 18, 1997, the district court granted the Elliotts' motion for partial summary judgment. The court held that collateral estoppel barred re-adjudica-

---

1. There was never a separate motion or hearing, so the 54(b) certificate was not entered. This made the partial judgment non-final and the court later reconsidered its ruling with respect to the statute of limitation defense.

tion of the claims decided by the bankruptcy court. The district court took under advisement the Neibaurs' arguments concerning the one-action rule.

On January 9, 1998, the district court issued its opinion on the Neibaurs' I.C. § 6–101 claim. The court *sua sponte* reversed its decision that the Neibaurs' mortgage was time-barred. A trial was held, and the district court entered its findings of fact and conclusions of law. The district court concluded that the Elliotts did not have to foreclose and sell the Hansens' property before foreclosing on the Neibaurs' property. The district court further determined that the Neibaurs had bargained away their statute of limitation defense and such bargaining inured to the detriment of Neibaur Farms. Attorney fees were awarded by the district court to the Elliotts as the prevailing party. An Amended Judgment and Decree of Foreclosure was filed on January 30, 2003. The Neibaurs and Neibaur Farms appeal.

### ISSUES PRESENTED ON APPEAL

1. Did the district court err in entering a decree of foreclosure of the Neibaurs' mortgage in the absence of a condition precedent, i.e., the foreclosure sale of the land covered by the Hansens' mortgage?

2. Did the district court err by exercising jurisdiction over the foreclosure of the Neibaurs' mortgage?

3. Did the district court err by allowing the Elliotts to proceed with a foreclosure action and holding that the 'one-action' rule of Idaho Code § 6–101 inapplicable?

4. Did the district court err in holding that foreclosure of the Neibaurs' mortgage was not barred by the applicable statute of limitation?

5. Did the district court err in holding that certain of Neibaurs' arguments and defenses were precluded from trial by the doctrines of *res judicata* and collateral estoppel based on the bankruptcy action which was ultimately dismissed?

6. Did the district court err by *sua sponte* reversing the summary judgment previously entered in favor of Neibaur Farms?

7. Did the district court err in awarding fees and in its method of calculating attorney fees for the Elliotts at trial?

8. Are any of the parties entitled to attorney fees on appeal?

### STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court uses the same standard of review as the district court did in ruling upon the motion. *Baxter v. Craney,* 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c).

Generally, when considering a motion for summary judgment, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Construction Management Systems, Inc. v. Assurance Co. of America,* 135 Idaho 680, 682, 23 P.3d 142, 144 (2001). However, where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982); *see also Cameron v. Neal,* 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997).

### DISCUSSION

#### I.

#### Foreclosure Requirement

The Neibaurs and Neibaur Farms contend that the clear and unambiguous language of the mortgages require that there must first be a foreclosure sale of the Hansens' property prior to a foreclosure sale on

the Neibaurs' property and that the Hansens' property shall be sold first.

The Elliotts agree that the language of the mortgages is clear and unambiguous. However, the Elliotts argue that the provisions for foreclosure on either of the mortgages were elective and permissive. The Elliotts point out that both the Neibaurs and Neibaur Farms benefited from the Hansens entering into the stipulations; the Hansens personally paid $750,000 to avoid foreclosure on their farm, which was worth $135,000 at the time of trial, and agreed further to pay an additional $120,000, which greatly reduced the amount of liability on the promissory notes.

Paragraph 10 in both mortgages provides:

10. In the event of default by Green Line Sales Inc. in the payment of the promissory note guaranteed by the Mortgagor or in the event of any other default by Green Line Sales Inc. which gives right to the Mortgagee to enforce the terms of the note and any security instruments securing the payment of said note it is expressly agreed that the Mortgagee, prior to the foreclosure of this mortgage, shall be required to foreclose against any security it has involving Green Line Sales Inc. In the event that the proceeds from the said security are insufficient to retire the indebtedness owed to Mortgagee, then in such event the Mortgagee may foreclose this Mortgage under the laws of the State of Idaho.

The Hansens' mortgage further provides:

The Mortgagor further covenants and agrees that Darwin P. Neibaur and June G. Neibaur have likewise and simultaneously executed a Mortgage to the Mortgagee for the same purposes and under the same terms and conditions as this Mortgage (with the exception of the real estate description) and that in the event the Mortgagee forecloses this mortgage, subject to its conditions precedent, the Mortgagee may foreclose the Neibaur mortgage and this mortgage simultaneously and in the event of a foreclosure sale the property in this mortgage shall be sold first prior to the sale of the Neibaur prop-

erty. The Mortgagor has agreed with Neibaur as to this covenant.

The Neibaurs' mortgage similarly states:

The Mortgagor further covenants and agrees that John D. Hansen and L. Patricia Hansen, have likewise and simultaneously executed a Mortgage to the Mortgagee for the same purposes and under the same terms and conditions as this Mortgage (with the exception of the real estate description) and that in the event the Mortgagee forecloses this mortgage, subject to its conditions precedent, the Mortgagee may foreclose the Hansen mortgage and this mortgage simultaneously and in the event of a foreclosure sale of the property in this mortgage shall be sold subsequent to the sale of the Hansen property. This Mortgagor has agreed with Hansen as to this covenant.

This Court in *Albee v. Judy*, 136 Idaho 226, 230, 31 P.3d 248, 252 (2001), held:

Construction of the meaning of a contract begins with the language of the contract. "If the contract's terms are 'clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law .... and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." If, however, the contract is determined to be ambiguous, "the interpretation of the document is a question of fact which focuses upon the intent of the parties."

*Id.* (citations omitted). In determining whether a contract is ambiguous, this Court ascertains whether the contract is "reasonably subject to conflicting interpretation." *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992). "The determination and legal effect of a contractual provision is a question of law where the contract is clear and unambiguous, and courts cannot revise the contract in order to change or make a better agreement for the parties." *Id.* at 997, 829 P.2d at 1346.

The district court concluded that the language of the mortgages was unambiguous and that this language determined the parties' rights. The district court held that in

the event of a joint mortgage foreclosure, the Hansens' property should be foreclosed upon and sold first: The district court determined that because this was not a joint foreclosure sale, the foreclosure on the Hansens' property was permissive. The district court stated that the language of the contract was not "a prohibition against making a deal with Hansens, equal to or better than the value of their mortgaged property, and then foreclosing against the Neibaurs. The obvious purpose of the language was to look first to the Hansens, then to the Neibaurs. That is exactly what the Elliotts did."

The language of the mortgages appears to be free from conflicting interpretations by reasonable people. *Bondy,* 121 Idaho at 996, 829 P.2d at 1345. The mortgages both provide that the Elliotts "may foreclose this Mortgage under the laws of the State of Idaho." The mortgages further provide that the Elliotts "may foreclose" the Hansens' and the Neibaurs' mortgages simultaneously and in the event of a foreclosure sale, the Hansens' property shall be sold prior to the sale of the Neibaurs' property. The language clearly contemplates that the Elliotts can . simultaneously foreclose on the properties and in which case, the Hansens' property should be sold first. The language of the mortgages, however, does not *require* that the Elliotts must simultaneously foreclose or that the Elliotts must sell the Hansens' property first before the Elliotts are allowed to foreclose on the Neibaurs' property, as the Neibaurs contend.

This Court affirms the district court's finding that the language of the mortgages was unambiguous. This Court further holds that the conditions in the mortgages did not prevent the Elliotts from entering into a stipulation for payment by the Hansens of at least one-half of the amount owed on the promissory notes in lieu of foreclosing on their property, particularly where the amount paid by the Hansens exceeded the value of the property held as security.

## II.

### Jurisdiction to Determine Deficiency

The Neibaurs argue that the district court did not have jurisdiction pursuant to

I.C. § 6–108 to determine a deficiency because the court could not have calculated the balance due on the promissory notes without first foreclosing on the Hansens' property. The Neibaurs contend that without a foreclosure on the Hansens' property, the deficiency amount cannot be made except by speculation. The Neibaurs assert that by entering into the stipulation agreement, the Elliotts and the Hansens deprived the district court of jurisdiction to calculate a deficiency. The Neibaurs aver that the district court by allowing the Elliotts to foreclose on the Neibaurs' property rendered a number of essential rights and procedures ineffective. The other appellant, Neibaur Farms, points out that it was not a party to the modification agreement dated September 30, 1991, that was entered into by the Elliotts and the Hansens and satisfied a part of the debt.

Idaho Code § 6–108 provides:

No court in the state of Idaho shall have jurisdiction to enter a deficiency judgment in any case involving a foreclosure of a mortgage on real property in any amount greater than the difference between the mortgage indebtedness, as determined by the decree, plus costs of foreclosure and sale, and the reasonable value of the mortgaged property, to be determined by the court in the decree upon the taking of evidence of such value.

The district court noted in its opinion that the Neibaurs admitted that they owed the obligation evidenced by the land contract and promissory note in the amount of $53,906.20 plus interest; the district court entered judgment on this amount. The district court ordered that the Elliotts could proceed with the foreclosure on the Neibaurs' property. The district court ordered that following the sale, the proceeds from the sale would be applied to the judgment on the promissory notes. The district court utilized the amounts stipulated by the Elliotts and the Hansens to determine the remaining amounts owed on the promissory notes.

This Court holds that the district court did not lack jurisdiction to calculate the deficiency. There is sufficient evidence in the record for the district court to make this calculation,

and this Court affirms the district court's determination of the deficiency.

### III.

#### One–Action Rule

■ The Neibaurs argue that by the Elliotts removing the condition that the Hansens' property be sold prior to the sale of the Neibaurs' property, the security has been destroyed or ceases to exist. The Neibaurs contend that the Elliotts cannot proceed against the Hansens as a result of the stipulations they entered into, and therefore cannot proceed against the Neibaurs' property because of the one-action rule. The Neibaurs contend that the Elliotts have placed themselves in a position where their security has become valueless because of their own fault, acts or conduct.

The one-action rule, Idaho Code § 6–101, provides in pertinent part:

(1) There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate which action must be in accordance with the provisions of this chapter. In such action the court may, by its judgment, direct a sale of the incumbered property (or so much thereof as may be necessary) and the application of the proceeds of the sale to the payment of the costs of the court and the expenses of the sale, and the amount due to the plaintiff; and sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in the case of sales under execution; (and if it appears from the sheriff's return that the proceeds are insufficient, and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt), and it becomes a lien on the real estate of such judgment debtor, as in other cases on which execution may be issued.

The policy behind the single-action statute was explained in *Jeppesen v. Rexburg State Bank*, 57 Idaho 94, 99, 62 P.2d 1369, 1371 (1936), quoted in *Frazier v. Neilsen & Co.*, 115 Idaho 739, 740, 769 P.2d 1111, 1112 (1989):

When a debtor gives a mortgage to secure his debt, he gives his creditor a lien on his property and thereby authorizes him, at maturity of the debt, to proceed *in rem* against the property for the amount of the debt. This necessarily impairs the debtor's credit to that extent; and it was the evident intention of the legislature, by enacting sec. 9–101 [the predecessor of I.C. § 6–101], to require the creditor to proceed for collection of the debt (if not paid in due course) against the property, and to exhaust the security before being allowed to acquire any personal judgment against the debtor. In other words, it was intended not to allow the creditor to hold an incumbrance on his debtor's property, and at the same time proceed against him for a personal judgment, either with or without attachment, for to allow the creditor to do so might, in any case, result in impairing the debtor's credit in at least double the amount of his debt; that is, both *in rem* and *in personam*. This statute avoids a multiplicity of suits against the same debtor. (Citations omitted.)

■ The Idaho Court of Appeals has applied I.C. § 6–101, holding that the payment of a debt secured by a mortgage must first be sought from the mortgaged property. *Federal Land Bank of Spokane v. Parsons*, 118 Idaho 324, 327, 796 P.2d 533, 536 (Ct. App.1990). "To collect on the debt, the mortgage must be foreclosed. The creditor may not simply sue on the debt and collect by execution on the judgment." *Federal Land Bank of Spokane v. Parsons*, 116 Idaho 545, 549, 777 P.2d 1218, 1222 (Ct.App.1989). "Only if there is a deficiency, will the mortgagee be allowed to pursue the other assets of the mortgage debtor." *Federal Land Bank*, 118 Idaho at 327, 796 P.2d at 536.

After citing to Idaho cases dealing with the one-action rule, the district court determined "that [the] Elliotts must foreclose their mortgage on the Neibaur property before judgment against the Neibaurs may enter upon the Business Promissory Note. [The] Neibaurs' obligations under the Business Promissory Note and their guaranty thereof, is not enforceable in terms of a personal judgment until their mortgaged property has been

foreclosed, the property sold, and the proceeds thereof applied to the obligation."

We conclude that the Elliotts' stipulations with the Hansens do not render the Elliotts' security interest in the Neibaurs' property valueless, because the Elliotts were simply undertaking to collect part of the indebtedness from the Hansens prior to collecting from the Neibaurs as the contractual obligations permitted. The Elliotts followed the proper course by proceeding to foreclose upon the Hansens' and Neibaurs' property in order to obtain repayment of the debt evidenced by the promissory notes. *Parsons,* 116 Idaho at 549, 777 P.2d at 1222. The Elliotts reached a settlement with the Hansens for a portion of the debt. Under the one-action rule, the Neibaurs' property still retains value as the Elliotts have not attempted to sue directly on the debt and to collect by execution of a judgment for the debt. *See id.* The Neibaurs' property remains subject to the mortgage securing the promissory notes for the business and land contracts with the Elliotts. If the amount received from the foreclosure sale is insufficient to repay the debt, only then would the Elliotts be allowed to pursue the other assets of the Neibaurs. *Federal Land Bank,* 118 Idaho at 327, 796 P.2d at 536. The fact that the Elliotts reached a settlement with the Hansens in lieu of foreclosure on the Hansens' property does not affect the application of the one-action rule with respect to the foreclosure of the mortgage on the Neibaurs' property.

This Court holds that the parties' agreement permissively allowed the Elliotts to foreclose on the Neibaurs' property without first foreclosing on the Hansens' property. The district court's decision in that regard is affirmed.

## IV.

### Statute of Limitation

The Neibaurs contend that the action filed by the Elliotts was not filed within the applicable statute of limitation prescribed by I.C. § 5–214A. While the promissory notes recited that final payment of the principal balance would be due on November 15, 1990, the mortgages did not contain a maturity date. Because no maturity date was listed in the mortgage, the Neibaurs argue that the five-year statute should be deemed to establish the date of maturity of the indebtedness. They point out that the foreclosure action filed by the Elliotts was beyond the five-year period. Neibaur Farms likewise contends that the five-year statute of limitation expired on October 27, 1987, because the mortgage did not state a maturity date. Neibaur Farms point out that this foreclosure action was not commenced until May 24, 1993.

Idaho Code § 5–214A provides:

An action for the foreclosure of a mortgage on real property must be commenced within five (5) years from the maturity date of the obligation or indebtedness secured by such mortgage. If the obligation or indebtedness secured by such mortgage does not state a maturity date, then the date of the accrual of the cause of action giving rise to the right to foreclose shall be deemed the date of maturity of such obligation or indebtedness.

The district court initially ruled that the Elliotts' action on the Neibaurs' mortgage was time-barred by I.C. § 5–214A. The district court found that the mortgage was recorded on October 28, 1982, did not contain a maturity date, and that the action initiated by the Elliotts was not filed until May 1993, which was outside the five-year requirement of I.C. § 5–214A. The district court later reconsidered its ruling, however. The district court concluded that although its earlier determination was correct at the time it was rendered, upon further review of the record and documents filed in the action, the Neibaurs had "bargained away their limitations defense by acknowledging that they had a continued obligation under the promissory notes." In addition, the district court decided that issue preclusion applied to this instance since the bankruptcy court had the full and fair opportunity to litigate this issue.

The bankruptcy court found that the Neibaurs' statute of limitation defense was implicated by the modification of the business and land sale contracts in 1991. The bankruptcy court held "[a]t that time, accommodations for any existing defaults were made by the

parties, and [Neibaurs] acknowledged the continuing vitality of their debt to the Elliotts in the modification agreement. Whatever the status of the notes at that date, any limitations defense to the debts were bargained away by [Neibaurs] as part of the modification."

This case appears to fall under the second provision of I.C. § 5–214A: "If the obligation or indebtedness secured by such mortgage does not state a maturity date, then the date of the accrual of the cause of action giving rise to the right to foreclose shall be deemed the date of maturity of such obligation or indebtedness." Although the promissory notes did not contain a stated maturity date, it was clear that the debt was to be paid over a period of time longer than a five-year term, given that the promissory notes provided the final payment was to be made on January 2, 1990. This fact makes the Neibaurs' argument concerning the alleged defect in a maturity date for the mortgage unpersuasive. The recorded mortgage, when reviewed in conjunction with the promissory note that the mortgage secured, provides substantial compliance with the requirement of notice to the public of the maturity date of the mortgage, since the two related instruments together provide "the means ... to ascertain the date of maturity or whether the obligation is not mature." *Gebrueder Heidemann, K.G. v. A.M.R. Corp.*, 107 Idaho 275, 281, 688 P.2d 1180, 1186 (1984).

▉ Finally, the parties entered into a stipulation in September 1991, to extend the period of repayment. As both the district court and bankruptcy court observed, the Neibaurs were well aware that the debt was still owed to the Elliotts and in consideration for the extension of time for repayment on the promissory notes, the Neibaurs' statute of limitation defense was waived.

This Court holds that the action on the Neibaurs' mortgage was not time-barred by I.C. § 5–214A.

## V.

### Res Judicata and Collateral Estoppel

▉ The Neibaurs next contend that the district court erred in granting partial summary judgment against them on issues that were resolved in the Neibaurs' bankruptcy proceeding. The Neibaurs assert that the dismissal of the bankruptcy action reinstates all issues and allows the parties to proceed as if the bankruptcy petition had not been filed. Because the bankruptcy petition was dismissed, the Neibaurs argue that there was no final judgment and thus, the doctrines of *res judicata* and collateral estoppel should not apply.

Neibaur Farms also argues that the district court mistakenly relied in part upon the bankruptcy proceeding. It asserts that it was not a party to the bankruptcy proceeding and should not be bound by the bankruptcy court's decisions. Moreover, Neibaur Farms points out that the property at issue was owned by Neibaur Farms not the Neibaurs individually, who were the parties seeking bankruptcy relief.

▉ Whether collateral estoppel bars the relitigation of issues adjudicated in prior litigation between the same parties is a question of law subject to free review on appeal. *Mastrangelo v. Sandstrom, Inc.*, 137 Idaho 844, 846, 55 P.3d 298, 300 (2002). The Court recently explained:

Res judicata is comprised of claim preclusion (true res judicata) and issue preclusion (collateral estoppel). Under principles of claim preclusion, a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim. The three fundamental purposes served by res judicata are:

First, it "[preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results." Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims.

The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relit-

igation of any claims relating to the same cause of action which were actually made or which might have been made.

*Hindmarsh v. Mock,* 138 Idaho 92, 94, 57 P.3d 803, 805 (2002) (citations omitted).

Here, the district court found that the Neibaurs' defenses of the statute of limitation and equitable doctrines of impossibility, impracticability and frustration of purpose had been fully litigated before the bankruptcy court. The district court therefore determined that collateral estoppel prevented the Neibaurs from relitigating those issues.

According to the bankruptcy court's written decision, the court conducted an evidentiary hearing "that consumed several days to accommodate the testimony of the many witnesses. Hundreds of pages of documentary evidence was received." The bankruptcy court addressed the Neibaurs' contention "that the Elliotts' claim should be disallowed completely, arguing that the claim is barred by the applicable statutes of limitation" and the contention that "they are otherwise excused from paying the claim by case law doctrines of impossibility of performance, and impracticability or frustration of purpose." The bankruptcy court held that the Neibaurs were not excused from the performance of the agreements with the Elliotts under either theory. The bankruptcy court found that the Neibaurs were ineligible for the relief that they sought under Chapter 12. The Neibaurs sought to convert to a Chapter 11 proceeding, however, the bankruptcy court concluded "that conversion would be a useless gesture, not likely to result in confirmed plans." The bankruptcy court stated that the Neibaurs "appear to have made peace with most of their major creditors. However, their desire to continue the battle with the Elliotts leads this Court to conclude further reorganization efforts will by [sic] fruitless." The bankruptcy court then dismissed the Neibaurs' case.

From the record, it appears that the proceeding before the bankruptcy court resulted in "a valid final judgment rendered on the merits by a court of competent jurisdiction" which should serve as a bar to a subsequent action between the parties upon the statute of limitation and equitable defenses claims.

*Hindmarsh,* 138 Idaho at 94, 57 P.3d at 805. Accordingly, this Court upholds the district court's determination precluding a trial on the Neibaurs' arguments and defenses by operation of the doctrines of *res judicata* and collateral estoppel, based on their bankruptcy case.

## VI.

### Reconsideration of Partial Summary Judgment

■ Neibaur Farms argues that the district court erred by *sua sponte* reversing the partial summary judgment ruling on the statute of limitation defense and dismissal of Neibaur Farms. Neibaur Farms contends that it had no expectation of the potential for reversal on the summary judgment that had been ruled on in 1995. The Elliotts contend that the district court had the authority pursuant to I.R.C.P. 11(a)(2)(B) to vacate the partial summary judgment order because it was not a final judgment.

The district court stated, "[t]his court, however, by way of reconsideration, concluded that although its Opinion issued on January 9, 1995, was a correct determination of the law at the time, the agreement entered into by the Neibaurs on September 20, 1991, allows this court to conclude that the Neibaurs bargained away their limitation defense by acknowledging that they had a continuing obligation under the promissory notes."

The district court's grant of partial judgment in January 1995 was not a final judgment and did not preclude the court from later reconsidering the statute of limitation defense. At the time of its ruling in 1995, the district court made it clear that the propriety of a I.R.C.P. 54(b) certificate, which was necessary to make the judgment final and appealable, would have to be heard by a separate motion before being entered. Neither the Neibaurs nor Neibaur Farms requested such a hearing, and the judgment remained a non-final determination.

Rule 11(a)(2)(B) of the Idaho Rules of Civil Procedure specifically provides that a motion for reconsideration of any interlocutory order of the trial court may be made at any

time before entry of final judgment but not later than fourteen (14) days after the entry of final judgment. This Court has repeatedly held that I.R.C.P. 11(a)(2)(B) provides a district court with authority to reconsider and vacate interlocutory orders so long as final judgment has not been entered. *Telford v. Neibaur*, 130 Idaho 932, 950 P.2d 1271 (1998); *Sammis v. Magnetek Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997); *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 878 P.2d 762 (1994).

The district court addressed the assertion of Neibaur Farms questioning whether, as a separate entity, it should be bound by the district court's change of position with respect to the Neibaurs' limitation defense. The court acknowledged that Neibaur Farms had not signed any promissory note, security agreement or mortgage, and had not filed bankruptcy. The district court recognized that Neibaur Farms was involved only as the present record holder of the mortgaged property, having acquired its interest by quitclaim deeds in February and May 1991. However, the district court held that Neibaur Farms was bound by the Neibaurs' actions. The court noted that subsequent to the deeds to Neibaur Farms, the Neibaurs reaffirmed their mortgage with the Elliotts, and extended it, on September 30, 1991. The district court ruled:

> It was [District Judge Granata's] finding that the Neibaurs had bargained away the time limitation defense, by signing Exhibit 11, the September 30, 1991 Agreement Modifying Promissory Notes, Mortgages, and Security Agreement. Parties to a mortgage can amend the terms of the mortgage and can extend the dates. See

Idaho Code, Section 5–214A. Darwin Neibaur Farms takes whatever interest Darwin and June Neibaur had in this property, and that interest included a mortgage which could have its due date extended.

The Elliotts are entitled to foreclose the mortgage against all parties, including Darwin Neibaur Farms. However, once the property has been foreclosed and sold, there can be no further liability on the part of the partnership.

This Court holds that the district court did not err in *sua sponte* reversing its grant of partial summary judgment to Neibaur Farms.

## VII.

### Attorney Fees at Trial

The Neibaurs contend that the district court failed to consider all of the factors prescribed by I.R.C.P. 54(e)(3) when determining the amount of attorney fees to award to the Elliotts.[2] The Neibaurs argue that the district court only considered the factors of time and labor. They assert that the district court must do more than simply recite that I.R.C.P. 54(e)(3) factors were considered, and, instead, the district court should make explicit findings that demonstrate consideration of all of the factors.

A discretionary award of attorney fees is subject to review and vacation only upon a showing of an abuse of discretion. *McCann v. McCann*, 138 Idaho 228, 61 P.3d 585, 595 (2002). To review an exercise of discretion, this Court applies a three-factor test. The three factors are: (1) whether the trial court correctly perceived the issue

---

2. I.R.C.P. 54(e)(3) provides:
   Rule 54(e)(3) Amount of Attorney Fees. In the event the court grants attorney fees to a party or parties in a civil action it shall consider the following factors in determining the amount of such fees:
   (A) The time and labor required.
   (B) The novelty and difficulty of the questions.
   (C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
   (D) The prevailing charges for like work.
   (E) Whether the fee is fixed or contingent.
   (F) The time limitations imposed by the client or the circumstances of the case.
   (G) The amount involved and the results obtained.
   (H) The undesirability of the case.
   (I) The nature and length of the professional relationship with the client.
   (J) Awards in similar cases.
   (K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.
   (L) Any other factor which the court deems appropriate in the particular case.

as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000) (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

The district court acknowledged that the award of attorney fees was within its discretion. The district court pointed out all of the considerations that must be taken before awarding attorney fees including the factors listed in I.R.C.P. 54(e)(3) and stated that it had taken those factors into consideration. The district court then awarded attorney fees to the Elliotts.

It is well settled that I.R.C.P. 54(e)(3) does not require the district court to make detailed findings on each listed factor. The rule merely provides that the district court shall consider the factors, but does not require a finding on each one, as a particular listed factor may or may not be relevant to the outcome. *U.S. Bank Nat'l Ass'n v. Kuenzli*, 134 Idaho 222, 228–29, 999 P.2d 877, 883–84 (2000); *Perkins v. U.S. Transformer West*, 132 Idaho 427, 431–32, 974 P.2d 73, 77–78 (1999); *Post Falls Trailer Park v. Fredekind*, 131 Idaho 634, 638, 962 P.2d 1018, 1022 (1998); *Empire Fire and Marine Ins. Co. v. North Pacific Ins. Co.*, 127 Idaho 716, 720, 905 P.2d 1025, 1029 (1995); *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 351, 766 P.2d 1227, 1232 (1988); *Irwin Rogers Ins. Agency, Inc. v. Murphy*, 122 Idaho 270, 277, 833 P.2d 128, 135 (Ct.App.1992).

This Court holds that the district court did not abuse its discretion in awarding attorney fees to the Elliotts.

## VIII.

### Attorney Fees on Appeal

All parties request an award of attorney fees for this appeal. The Neibaurs present no authority as the basis for their request, but simply condition their request upon the belief that they will be the prevailing party on the appeal. Because we have ruled against the Neibaurs on the merits of the appeal, they are not the prevailing party. Their request is, therefore, denied.

Neibaur Farms cites I.C. § 12–121 as the basis for an award of attorney fees on the appeal. That statute permits an award to be made only to a prevailing party. As with the Neibaurs, Neibaur Farms is not the prevailing party on this appeal. The request for an award of fees to Neibaur Farms is therefore denied.

The Elliotts request an award for fees but do not make their claim under either the terms of the contracts, the promissory notes, the guarantees, the mortgages or I.C. § 12–120(3). Their request is premised only upon I.C. § 12–121 (although they cite also Idaho Appellate Rule 41, which addresses the method whereby claims for attorney fees are presented and processed, *see Robbins v. County of Blaine*, 134 Idaho 113, 996 P.2d 813 (2000)). While the Elliotts qualify as the prevailing party to the appeal under I.C. § 12–121, an award pursuant to that statute is discretionary and will be made only where the Court finds that the appeal was "pursued or defended frivolously, unreasonably or without foundation." The issues presented and the arguments made by the Neibaurs and Neibaur Farms on this appeal do not leave this Court with the abiding belief that the appeal was pursued frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The Elliotts' request for an award of attorney fees does not meet the standard of I.C. § 12–121 and is therefore denied.

## CONCLUSION

This Court affirms the decision of the district court allowing the Elliotts to foreclose their mortgage on the Neibaurs' property. Costs, but not attorney fees on appeal, are awarded to the Elliotts.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.